COMMONWEALTH vs. BRUCE JEWETT.

Middlesex.  April 5, 1984. — July 23, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, LYNCH, & O'CONNOR, JJ.

*Rape. Identification. Evidence,* Exculpatory, Relevancy and materiality.

At a criminal trial the defendant's offer of proof following the judge's exclusion of proffered evidence of misidentification was sufficient to preserve the issue for appellate review. [561-562]

The judge at a rape trial erred in excluding evidence that the victim of another sexual assault, committed five days before the rape for which the defendant was indicted, had misidentified the defendant as her assailant from the same photographs from which the complainant in the present case had identified him. [562-564]

INDICTMENT found and returned in the Superior Court Department on February 11, 1980.

The case was tried before *James P. Donohue,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Ellen L. Bane,* Assistant District Attorney, for the Commonwealth.

*Margaret H. Van Deusen* for the defendant.

LYNCH, J. The defendant was convicted of rape and was sentenced to a term of thirty-five to fifty years at the Massachusetts Correctional Institution, Walpole. He filed a timely appeal from this conviction. The defendant also filed a motion for a new trial, which the trial judge denied. A notice of appeal from this denial was filed, and this was consolidated with the appeal from the defendant's conviction.

After a decision by the Appeals Court reversing the judgment of the Superior Court, *Commonwealth* v. *Jewett,* 17 Mass. App. Ct. 354 (1984), we granted the Commonwealth's application for further appellate review. We reach the same result.

We summarize the facts, based upon the findings of the trial judge in response to a motion to suppress the identification of the defendant. On October 31, 1979, the victim was alone at her mother's home in Newton. About 8 P.M., she heard noises outside which sounded as if her cat were fighting with another animal. She decided to go outside and investigate. She walked out the front door and around the porch to the rear of the house. Hearing the noises continuing from some point beyond the rear yard, she walked down a path into the woods for a short distance. She came to a clearing in the woods, and, although the noises continued, she decided to turn back. As she was turning, the victim was grabbed from behind, dragged from the path, thrown down and raped. The episode lasted no more than five minutes; at the sound of a rustling nearby, the victim's assailant fled on foot.

Although it was dark at the time of the incident, there was evidence that the victim was able to see her assailant's face adequately on account of light from a nearby MBTA train station and a warehouse, and because it was a clear night with some moonlight. Soon after the incident, the police were called and they went to the victim's home. They showed her an array of about twenty photographs, and from this she selected the defendant's picture as being the one she "thought" was that of her assailant. However, she stated that she "would like to see" the man in person so as to confirm her initial impression. On November 19, 1979, the victim again picked the defendant's picture out of a smaller array of about nine color photographs. Again, she declined to state that she was "positive" that the picture she selected was that of her assailant. Finally, three months after the incident, the victim attempted an in-person identification of her attacker. On February 1, 1980, the defendant was in the Newton District Court on another matter. The victim walked around the courtroom and identified the defendant as her assailant.

The defendant has consistently maintained a defense of mistaken identity. Through the testimony of a number of witnesses, he introduced evidence that at the time of the incident he and a friend were driving to or waiting at a railroad station located

a number of miles from the victim's home, for the purpose of meeting a train carrying their girl friends. However, the Commonwealth placed emphasis on the fact that during the course of the defendant's trip to the station, he and his companion stopped at a restaurant located within one mile of the victim's residence. They left the restaurant about 8 P.M.

Identification was, essentially, the sole issue at trial, with the defendant's alibi defense being weighed against the victim's testimony. After three full days of deliberations, during which the judge instructed the jury according to the standard set out in *Commonwealth* v. *Rodriquez,* 364 Mass. 87, 98-103 (1973),[1] the jury returned a guilty verdict.

The Commonwealth argues that the trial judge correctly refused to permit the defendant to introduce testimony by a victim (hereafter, victim B) of a sexual assault five days before the incident at issue. Victim B, a teenager one year younger than the victim in the instant case (hereafter, victim A or the victim), was walking to school along a "short cut" path in a neighboring town (Watertown) when she was attacked. She, like victim A, was grabbed from behind and thrown to the ground, and as in the instant case her assailant fled on foot when startled by a noise along the path (in this case, a group of children). Acting on information provided by the Newton police department, the Watertown police included the same photograph of the defendant in the array shown to victim B. As with victim A, although victim B tentatively suggested that the defendant's photograph could be that of her attacker, she stated that she could not positively confirm this fact unless she saw him in person. On November 19, 1979, victim B viewed twenty to twenty-five people in the Newton District Court and identified the defendant as the person who had assaulted her. She stated that she was "85% positive" of this fact. However, on November 26, 1979, the charges against the defendant in victim B's case were dropped on the prosecutor's recommen-

---

[1] *Rodriquez* outlines the instructions which may be given a jury when "because of the lapse of time or otherwise the judge apprehends that the jury is deadlocked." *Rodriquez, supra* at 98.

dation, since on the day of the incident the defendant was a voluntary in-patient at the treatment center at the Massachusetts Correctional Institution, Bridgewater, and therefore could not have been in Watertown.[2]

At trial, the defendant's counsel explained these facts to the judge in some detail, and proposed to call victim B as a witness and to introduce the dismissed complaint in evidence, in support of his theory of misidentification on the part of victim A. His offer of proof was cut off by the judge, and his request to introduce the evidence denied.[3] The defendant argues that this ruling deprived him of the ability to present a defense, misidentification — an especially serious deprivation considering that the prosecution's entire case hinged on the accuracy of victim A's identification. The defendant argues that the judge's action was error, and that therefore he is entitled to a new trial. We agree.

Initially we must consider the Commonwealth's argument that the defendant's offer of proof regarding the misidenti-

---

[2] Consistent with his misidentification theory, the defendant has also asked us to consider evidence of a third sexual assault which occurred two days before the assault on victim B, and for which the defendant was charged as the assailant on the basis of a similar photographic identification. Unlike the case involving victim B, this case went to trial and resulted in the defendant's acquittal, probably due to evidence showing that the defendant could not have been at the location of the incident (Newton) at the time when it occurred. However, this third incident was neither raised by the defendant at trial nor until more than one and one-half years later, in the context of an amended motion for new trial. We therefore decline to consider it as a basis for this appeal.

[3] The exchange between defendant's counsel and the trial judge consisted of the following:

DEFENSE COUNSEL: "It's my understanding there was a young lady . . . in Watertown who accused Mr. Jewett of raping her on the 26th of October, 1979, five days before this offense. She went to the Newton District Court, identified him there, looked at the very same pictures that had been introduced in evidence here, and positively identified him from both the pictures and the in-court identification. Subsequent to that, when Mr. Jewett was brought into . . . Waltham District Court, before that probable cause hearing, it was shown to the Commonwealth that Mr. Jewett was locked up on the 26th of October at M.C.I. Bridgewater. As a result of that fact he was incarcerated on the date this supposedly happened. That complaint was dismissed. I want to bring the girl in here, the complaint introduced in evidence, to show that — "

THE JUDGE: "That is denied and your exception is noted."

fication evidence was inadequate and that this issue was not properly raised until the defendant's amended motion for a new trial. We conclude that the defendant's offer of proof was sufficient under the circumstances. He was not required to make further efforts "in the face of the judge's unequivocal adverse ruling." *Commonwealth* v. *Graziano,* 368 Mass. 325, 330 (1975). Mass. R. Crim. P. 22, 378 Mass. 892 (1979). Defense counsel's description of the misidentification evidence was enough to alert the judge to its relevance in a case where alibi and mistaken identity figured so significantly.

"Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law." *Washington* v. *Texas,* 388 U.S. 14, 19 (1967). This broad right has given rise to a rule allowing a defendant to introduce evidence that another person recently committed a similar crime by similar methods, since such evidence tends to show that someone other than the accused committed the particular crime. See *Commonwealth* v. *Keizer,* 377 Mass. 264 (1979); *Commonwealth* v. *Murphy,* 282 Mass. 593 (1933). See also *Pettijohn* v. *Hall,* 599 F.2d 476 (1st Cir. 1979); *Holt* v. *United States,* 342 F.2d 163 (5th Cir. 1965); *People* v. *Bueno,* 626 P.2d 1167 (Colo. Ct. App. 1981), cited with approval in *People* v. *Flowers,* 644 P.2d 916, 919 (Colo.), appeal dismissed, 459 U.S. 803 (1982). *State* v. *Garfole,* 76 N.J. 445 (1978).

No positive rule of law other than normal considerations of relevancy stands in the way of the admission of misidentification evidence. "Although the decision of a trial judge to admit or reject evidence of other crimes ordinarily will not be disturbed, that decision is not absolute and may be set aside if justice requires a different result." *Commonwealth* v. *Keizer, supra* at 267. In the instant case, justice does require the admission of the proffered evidence concerning possible misidentification of the defendant, due to the similarity of the circumstances and the importance of the identification in this case. The same photograph of the defendant was used in both initial identifications. This was not a coincidence; the Newton police had focused on the defendant as a suspect and had notified

the Watertown police of their suspicions. In addition, the incidents share many similarities. There was a close correspondence of time and location; the incidents happened within one week of each other in neighboring towns. Both involved assaults on individuals of roughly the same age, consisting of a sudden and brief attack from behind, followed by a quick departure on foot. Both victims experienced similar difficulties in making a firm identification based on only a photograph, and each refused to say that she was "positive" that her assailant was the defendant until she could view him in person.

We agree with the Appeals Court that the defendant need not "demonstrate the same degree of similarity [between incidents] which the Commonwealth must demonstrate when seeking to introduce such evidence to establish the defendant's guilt." *Commonwealth* v. *Jewett,* 17 Mass. App. Ct. 354, 358 n.4 (1984). *Perry* v. *Watts,* 520 F. Supp. 550, 560 (N.D. Cal. 1981). When a defendant offers exculpatory evidence regarding misidentification, prejudice ceases to be a factor, and relevance should function as the admissibility standard.

We have little doubt of the relevancy of the evidence proffered by the defendant, and reject the Commonwealth's argument that it was merely collateral. While it is true that the extent to which collateral matters may be made the subject of inquiry at trial is largely within the sound discretion of the trial judge, we have also said that "[w]here . . . identification was an important issue, the defendant undoubtedly had the right to show that . . . [the victim's] identification of him was unreliable." *Commonwealth* v. *Franklin,* 366 Mass. 284, 290 (1974), quoting from *Commonwealth* v. *Roselli,* 335 Mass. 38, 40 (1956). Here, the prosecution's case relied upon the victim's identification of her assailant and the defendant's case consisted wholly of a rebuttal of this identification by means of an alibi and evidence of misidentification. Under these circumstances, evidence of a prior misidentification occurring in a similar incident and based upon the same photograph of the defendant was probative on the only contested issue and should not have been excluded.

The Commonwealth's related argument that inclusion of evidence regarding victim B's misidentification would amount to an impermissible attempt to impeach victim A's credibility is also wide of the mark. Victim B's mistaken selection has no bearing on victim A's credibility. The purpose for which evidence is offered is determinative of its relevancy, and here evidence of victim B's misidentification was *not* offered for impeachment. See, e.g., *Pettijohn* v. *Hall, supra* at 478-480. Instead, the evidence was offered "for the purpose of direct testimony to establish a defense" of mistaken identity, *id.* at 480, and to this end it was relevant.

We also agree with the Appeals Court on the other issues raised by the defendant.

*Judgment of the Superior Court reversed.*

*Verdict set aside.*