IN THE MATTER OF MARY MOE.

Suffolk.   October 23, 1984. — October 31, 1984.

Present: GREANEY, C.J., GRANT, & DREBEN, JJ.

*Minor,* Abortion.   *Abortion.*

Under G. L. c. 112, § 12S, a judge who finds that a minor is sufficiently
    mature to determine for herself whether to undergo an abortion is without
    authority to condition his approval of the abortion on the minor's will-
    ingness to submit to a particular type of medical procedure or facility
    which he may think preferable to those proposed by the minor. [730-732]

PETITION filed in the Superior Court Department on October
19, 1984.

The case was heard by *Young,* J.

*Jamie Ann Sabino* for the petitioner.

GRANT, J.   A sixteen year old unmarried woman petitioned
the Superior Court under the provisions of the second paragraph
of G. L. c. 112, § 12S (as appearing in St. 1980, c. 240), for
an order authorizing an abortion on her without the consent of
or notice to either of her parents. A judge of that court held a
brief hearing on Friday, October 19, 1984, in the course of
which he learned that the petitioner was approximately fifteen
weeks pregnant (according to an ultrasound diagnosis) and that
she proposed to have a vacuum (sometimes referred to as a
"D[ilation] & E[vacuation]") procedure performed on an out-
patient basis at a clinic which she had selected.[1] In the absence
of any medical evidence before him (see note 5, *infra*), the
judge delivered himself of the opinion that the procedure ought
to be performed at a hospital and recommended to the petitioner
and her counsel that they explore the possibility of securing.
an abortion at such a facility. He suggested that inquiry be made

[1] The hearing appears to have proceeded on the assumption that the clinic
is licensed by the Department of Public Health under G. L. c. 111, § 51.

at a specific, well-known teaching hospital in Boston. He then recessed the hearing over the weekend, while offering to make himself available at any time and to sign the required authorization if he should be advised that an accredited hospital had agreed to perform an abortion.

We do not know whether the petitioner made any such inquiry as the judge had suggested. We do know that she appears to have persisted in her desire to have a D & E at the clinic of her choice and to have advised the judge to that effect on the following Monday morning, October 22, 1984. The judge thereupon entered the order of denial which is set out in the margin.[2] The order was accompanied by a memorandum in which the judge articulated the reasons for his denial. The memorandum contained the following paragraph: "This court does not deny that it is at least medically feasible to perform a vacuum abortion during the second trimester. See A. Altman, Midtrimester Abortion by Laminaria and Vacuum Evacuation on a Teaching Service: A Review of 789 Cases, paper presented at the 18th Annual Meeting of the Association of Planned Parenthood Physicians, Denver Colo., October 4, 1980. Nevertheless, there is utterly no evidence on the present record that any special precautions will be taken due to the petitioner's advanced state of pregnancy. Indeed, her description — while that of a lay person — seems to indicate the absence of any special precautions. Moreover, there is, on this record, no evidence whatsoever of the medical facilities available at the clinic to deal with internal hemorrhaging or other complications attendant upon the termination of such a pregnancy."

---

[2] "After a full hearing pursuant to G. L. c. 112, § 12S, the court determines and rules that the petitioner is sufficiently mature to determine for herself whether to undergo an abortion procedure but insufficiently mature to give her informed consent to a mid-trimester abortion at the [named clinic] rather than at an accredited hospital. Using the substituted judgment test, this court determines and rules that, were the petitioner mature, she would explore the availability of a hospital abortion and would pursue that course. Accordingly the court denies the petitioner's present request and retains jurisdiction to permit her to explore appropriate medical services. A more complete finding and determination will issue."

The petitioner appealed to this court. See *Matter of Moe*, 12 Mass. App. Ct. 298, 300 & n.2 (1981). After listening to the tape of the proceedings in the Superior Court,[3] we heard argument from the petitioner's counsel on October 23, 1984. Later that day we issued an order which reversed the decision of the Superior Court and ordered that court to issue forthwith an order authorizing an abortion. Our rescript issued immediately. The purpose of this opinion is to explain the reasons for our decision.

The statutory provisions which gave rise to the present proceedings are found in the second paragraph of G. L. c. 112, § 12S, as appearing in St. 1980, c. 240. They read: "If a pregnant woman less than eighteen years of age has not married and . . . if she elects not to seek the consent of one or both of her parents or guardians, a judge of the superior court department of the trial court *shall,* upon petition, or motion, and after an appropriate hearing, authorize a physician to perform the abortion [1] if said judge determines that the pregnant woman is mature and capable of giving informed consent to the proposed abortion or, [2] if the judge determines that she is not mature, that the performance of an abortion upon her would be in her best interests" (emphasis supplied).[4] This portion of the statute is completely silent on the question whether possible medical risks attendant on the time, place or type of procedure which may be proposed by the petitioner should enter into either type of determination.

The only portion of § 12S which is concerned with possible medical risks is found in the preceding (first) paragraph, which applies without regard to the age or marital status of a woman who desires an abortion. The first sentence of that paragraph forbids a physician to perform an abortion on any woman without first obtaining her formal written consent. The second sentence requires that such consent appear on a form prescribed by the Commissioner of Public Health. The third sentence reads

---

[3] We now have a stenographic transcript of the proceedings.

[4] The numbers in brackets have been inserted for ease of reference in the text.

in the part here material: "[The] form . . . shall include the following information: a description of the stage of development of the unborn child; the type of procedure which the physician intends to use to perform the abortion; and the possible complications associated with the use of the procedure and with the performance of the abortion itself . . . ."

The question for decision in this case is the manner in which the quoted provisions of the first and second paragraphs of § 12S are to be synthesized into an harmonious whole. We note that it is only under the second prong of the language quoted from the second paragraph [2], which applies only if the judge determines that a petitioner is incapable of giving informed consent to an abortion, that the judge is to exercise a substituted judgment in order to determine whether an abortion is in the best interests of the petitioner. We have no doubt that under the second prong the judge is to consider and weigh whatever evidence may be offered and admitted at the required hearing which bears on any medical risks to the petitioner which may be attendant on the time, type or place of the procedure proposed by her. The statute places no burden on the petitioner or her counsel to produce evidence concerning medical risks or the lack thereof in the first instance, but we have no doubt that the judge may call for such evidence if he believes it necessary to a proper determination of the petitioner's best interests.

There is no comparable requirement of determining such interests under the first prong [1] of the language quoted from the second paragraph of § 12S. The only determination to be made by the judge under that prong is whether the petitioner is "mature and capable of giving informed consent to the proposed abortion." If the judge so determines, he "*shall* authorize a physician to perform *the* [proposed] abortion" (emphasis supplied). In making that determination the judge is to consider and decide whether the petitioner is capable of understanding and evaluating the advice as to "the type of procedure which the physician intends to use to perform the abortion [ ] and the possible complications associated with the use of the procedure and with the performance of the abortion itself" which

must be given by a physician under the first paragraph of § 12S. If there is evidence before the judge as to the advice which has been or will be given, the judge may consider that evidence, but only for the purpose of determining whether the petitioner understands or will understand the advice and is capable of evaluating any risks and deciding for herself whether the risks should be run. The same is true of any evidence of possible medical risks that may come from any other source. There is nothing in the first prong which authorizes a judge to condition his approval of an abortion on a petitioner's willingness to submit to a particular type of medical procedure or facility which he may think preferable to those proposed by a petitioner.

We think it clear from the transcript, from the judge's memorandum and from his order (note 2, *supra*) that he regarded the petitioner in this case as sufficiently mature to determine for herself (i.e., to "give informed consent" on the question) whether to undergo an abortion, which is the only prerequisite of an order authorizing an abortion under the first prong of the second paragraph of § 12S. As we see it, the judge blurred the distinctions between the two prongs of that paragraph when he employed the best interests test of the second prong to impose, in effect, a condition that any abortion be performed in an accredited hospital.[5] We appreciate the judge's concern for what he regarded as the best interests of the petitioner, but we think he should have ended the inquiry when he ruled from the bench that "the petitioner is, as to the decision to have an abortion, mature, and that the decision to

---

[5] The record is devoid of any medical evidence which would support either the fears expressed by the judge in the portion of his memorandum which has already been quoted (*supra* at 728) or his preference for having any procedure performed at an accredited hospital. The only semblance of medical evidence on either aspect of the judge's preoccupation was the petitioner's response to a question by her counsel concerning the advice the clinic had given her as to the "possible risks involved in an abortion procedure." That was "[t]hat I could get an infection and I could end up in a hospital, and I couldn't have any more children." The medical paper referred to in the judge's memorandum was never adverted to in the course of the hearing. Contrast *Commonwealth* v. *Wilborne,* 382 Mass. 241, 250 n.10 (1981).

have the medical procedure performed, she is sufficiently mature to make that decision." This ruling of necessity included a finding of informed consent under the first prong of the second paragraph of § 12S.[6]

---

[6] We have rested our decision on what we regard as the proper construction of the 1980 version of G. L. c. 112, § 12S. We leave to another day, if necessary, the constitutional ramifications of the decision in *Akron* v. *Akron Center for Reproductive Health, Inc.*, 462 U.S. 416, 434-439 (1983), which, we were told at argument, was not brought to the attention of the judge. That decision struck down a city ordinance which purported to require that all second-trimester abortions be performed in a hospital. Compare G. L. c. 112, § 12Q, as appearing in St. 1977, c. 397.