## COMMONWEALTH vs. VICTOR ROSARIO.

Middlesex.   November 13, 1985. — December 23, 1985.

Present: GRANT, KAPLAN, & SMITH, JJ.

*Evidence,* Relevancy and materiality, Cross-examination, Exculpatory, Hypothetical question. *Practice, Criminal,* New trial.

At the trial of an arson case during which a fire department captain testified that there had been "maybe four" fires in the building in question, one of which had been labeled "suspicious," the judge did not err in excluding certain hypothetical questions asked by defense counsel during cross-examination of the fire captain in an attempt to suggest that the owner of the building was responsible for the arson rather than the defendant, where one of the questions misstated the fire captain's testimony, and where the other question lacked a factual basis in the evidence. [289]

At the trial of an arson case the judge did not err in excluding a question asked by defense counsel in cross-examining the owner of the building which had been burned as to how many fires there had been in buildings owned by the witness in the city of Lowell, where on its face the question called for information as to collateral matters, and where no offer of proof was made which would permit the judge to determine the relevance of the question. [289-290]

In an arson case the judge did not err in denying the defendant's motion for a new trial based on the judge's exclusion at trial of certain questions by which defense counsel had attempted to show that the owner of the building in question, rather than the defendant, had been responsible for the fire as part of an arson-for-profit scheme and accompanied by affidavits to the effect that during the period 1974-1978 there had been twenty-two fires in other buildings owned by the same owner, and fifty-five more fires in other buildings owned by members of the owner's family or his affiliates, where none of the evidence in the affidavits was newly discovered, where the exclusionary rulings were open for scrutiny on the defendant's pending appeal from the judgments in the case, and where the judge could properly have made the same evidentiary rulings even if at trial he had been apprised of all the information submitted with the motion for a new trial. [290-291]

INDICTMENTS found and returned in the Superior Court Department on June 30, 1982.

The cases were tried before *Herbert F. Travers, Jr.*, J., and a motion for a new trial was heard by him.

*Richard Zorza,* Committee for Public Counsel Services, for the defendant.

*Emily Jay Gould,* Assistant District Attorney, for the Commonwealth.

GRANT, J. The defendant has appealed from a conviction of arson of a dwelling (G. L. c. 266, § 1) and from eight convictions of murder in the second degree (G. L. c. 265, § 1). Eight persons perished when a three-story tenement in Lowell went up in flames on March 5, 1982.

The defendant was convicted on the basis of three written confessions which he gave the police shortly after the fire.[1] The last, and most explicit, reads as follows: "I would like to add to my statement that Felix Garcia, Gardo Garcia, and I went to the Laconia [Bar] together. Felix and I did not meet Gardo at the Laconia as I first stated. Before leaving our house I watched Felix and Gardo make three [M]olotovs in the cellar of 38 Branch Street using 12 oz. bottles, (Millers), rags, gasoline, and some other liquid. We carried them to the Laconia and left the [M]olotovs in the brown paperbag in the trash while we were drinking. I left my house knowing we were going to burn the building on Decatur Street because Felix Garcia wanted to get Efrain Cortiz [one of those killed] over drugs. At the Decatur Street building Felix Garcia threw one [M]olotov, through the kitchen window, and Gardo Garcia threw one through a front window. I had the third [M]olotov and threw mine in the front hall."

The salient features of that confession were corroborated in several respects. Empty beer bottles, an empty gasoline can and possible ingredients of Molotov cocktails were found in the cellar of the apartment building in which the defendant and one of the Garcias lived, in an area to which both had access. There was testimony from two expert witnesses called by the

---

[1] The admissibility of the confessions is no longer in issue.

Commonwealth *v.* Rosario.

prosecution to the effect that the fire was of incendiary origin, that it had been started by the use of a liquid accelerant, and that one of the points of origin was in the front hall of the building. A witness who lived on the same street as the building and was walking by it on his way home during the evening in question observed three persons with their backs turned to him who were standing in front of the building. The witness turned his eyes away momentarily, heard the sound of breaking glass, and immediately turned in the direction of the building. He then observed, face to face and at close range, a person who was turning away from the building with his left arm raised in the air.[2] The building was engulfed in flames within minutes thereafter. The witness later identified the defendant as the person whose actions have just been described.

Captain Rockers of the Lowell fire department testified that there had been "maybe four" fires in the building in the previous seven years, one of which had been labeled "suspicious." The witness did not know the results of any investigation which might have been made by the arson squad. The following sequence of questions, objections and rulings occurred during the cross examination of a subsequent witness for the prosecution who was a sergeant in the State police attached to the office of the State fire marshal: "Q. Assuming, sir, that you were able to find that this particular building had been the subject of at least one suspicious fire in the past and other fires, would that draw your attention to a possible arson for profit scheme? THE PROSECUTOR: Objection, your Honor. THE COURT: The witness may answer. THE WITNESS: Would you restate the question please? Q. Yes. Assuming, sir, that it were to come to your attention that there was at least one suspicious fire in this building and three, four or more fires in this building — THE COURT: Well — Q. — would that draw your attention to the possibility of an arson for profit scheme? THE PROSECU-

---

[2] It was open to the jury to find that the defendant is left handed. He told the civilian interpreter through whom the confessions were obtained that he had injected himself with drugs shortly after the fire. He then proceeded to roll up his sleeve and show the interpreter a needle mark on his right arm.

TOR: Objection. THE COURT: Sustained. Q. Assuming, sir, that you were to find within the last ten to fifteen years that Mr. Spanos [the owner of the building] and his family had been involved in approximately fifty prior fires, would that draw your attention to an arson for profit scheme? THE PROSECUTOR: Objection. THE COURT: Sustained."

The second question was properly excluded because, by its use of the words "four or more fires", it misstated the Rockers testimony ("maybe four" fires). *Buck's Case*, 342 Mass. 766, 770-771 (1961). Liacos, Massachusetts Evidence 116 (5th ed. 1981) ("[A hypothetical] question is improper where it contains a material misstatement of facts"). The third question was properly excluded for lack of a factual predicate in the evidence. *Commonwealth* v. *Russ*, 232 Mass. 58, 74 (1919). *Commonwealth* v. *Howard*, 355 Mass. 526, 530-531 (1969). *LaClair* v. *Silberline Mfg. Co.*, 379 Mass. 21, 32-33 (1979). There was no offer to supply the missing predicate at a later point in the evidence.[3]

The following sequence occurred during the defendant's cross examination of Spanos, the owner of the building: "Q. How many parcels in the City of Lowell did you own at the time of [the] fire[?]" A. Quite a few. Well, not — a dozen, perhaps. Q. Now this building on Decatur Street that burnt down, were there any fires in that building prior to the fire — A. There had been, yes. Q. How many? A. Well, I can remember two prior to that. Q. How many fires did you have in any buildings in the City of Lowell that you owned? A. That I owned personally? THE PROSECUTOR: Objection. THE COURT: Sustained. We'll stick to this building."

---

[3] The judge was consistent and even-handed in his treatment of this sort of problem. A few pages later in the transcript he overruled a defense objection to the offer of a photograph through a witness who was in no position to say that the photograph was a fair and accurate representation of what it was supposed to depict. The judge did so on the basis of representations which the prosecutor had made in his opening statement which, if proved, would make the photograph admissible. The judge then explained for the benefit of the jury the function of evidence which is admitted de bene. The proper foundation of admissibility was introduced at a later date, and there was no motion to strike.

We see no error in the exclusion of this question when it is considered in light of the facts which were known to the judge at the time. There was nothing to suggest the desired answer or its possible relevance. On its face, the question called for information as to collateral matters, especially as it was not shown that arson was involved in any of the other fires. We are of opinion that this case presented one of the infrequent instances in which a cross examiner should be required to make an offer of proof which would permit the judge to determine the relevance of the question. See *Breault* v. *Ford Motor Co.*, 364 Mass. 352, 357-358 (1973); *Commonwealth* v. *Donahue*, 369 Mass. 943, 950-951 (1976); *Commonwealth* v. *Ahearn*, 370 Mass. 283, 286 (1976); *Commonwealth* v. *Barnett*, 371 Mass. 87, 95 & n.9 (1976), cert. denied, 429 U.S. 1029 (1977).[4] The defendant can derive no comfort from *Commonwealth* v. *Elliot*, 393 Mass. 824, 826-828 (1985), in which the court treated the allegations of a motion for a new trial as a substitute for an offer of proof which the judge had refused to permit during the trial.[5]

The verdicts were returned on March 28, 1983. On June 18, 1985, long after the appeal from the convictions had been entered in this court, present counsel for the defendant filed a motion for a new trial which complained of the evidentiary rulings considered above. The motion was accompanied by and relied on various affidavits to the effect that during the period 1974-1978 there had been twenty-two fires in other buildings owned by Spanos in Lowell and fifty-five more fires

---

[4] The defendant would have us find the necessary relevance in an "Arson Prevention Manual" which (we are told) was published by the Attorney General of the Commonwealth in 1982, and in other publications whose titles suggest that they deal with arson. We have not read any of the publications because it does not appear that any of them was brought to the attention of the trial judge when he made the rulings now under discussion. See *Commonwealth* v. *Wilborne*, 382 Mass. 241, 250 n.10 (1981); *Matter of Moe*, 18 Mass. App. Ct. 727, 731 n.5 (1984).

[5] Present counsel suggests in a footnote to his brief that we should excuse the absence of an offer of proof on the ground of ineffective assistance of trial counsel. The suggestion does not arise to the dignity of "argument" within the meaning of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). See *Lolos* v. *Berlin*, 338 Mass. 10, 13-14 (1958).

in other buildings owned by members of the Spanos family or by a Spanos affiliate. One of the affidavits was that of trial counsel for the defendant, who swore that all the foregoing information had been in his possession at the time of trial. The theme of the motion was that the rulings complained of had deprived the defendant of the opportunity to show that someone other than he had set the fire in question. See *Commonwealth* v. *Jewett*, 392 Mass. 558, 562 (1984), and cases cited.

The trial judge, noting that none of the evidence just referred to was "newly discovered" and that all the rulings complained of were open to scrutiny on the pending appeal, refused to consider the merits of the motion and denied it without a hearing. It was well within his discretion to do so. *Commonwealth* v. *McLaughlin*, 364 Mass. 211, 226 (1973). *Commonwealth* v. *Hill*, 375 Mass. 50, 53 (1978). *Commonwealth* v. *Harrington*, 379 Mass. 446, 449 (1980). *Commonwealth* v. *Little*, 384 Mass. 262, 269 (1981).

More to the point, perhaps, we think the judge could properly have made the same evidentiary rulings if, at trial, he had been fully apprised of all the information submitted with the motion for a new trial. The *Jewett* case was concerned with the "rule allowing a defendant to introduce evidence that another person recently committed a similar crime by similar methods, since such evidence tends to show that someone other than the accused committed the particular crime. . . No positive rule of law other than normal considerations of relevancy stands in the way of admission of misidentification evidence" (citations omitted). 392 Mass. at 562. The defendant's first obstacle would have been that of recentness, as the most recent other fire referred to in any of the affidavits had occurred almost three and one-half years prior to the fire in this case. There would have been a problem with the "[o]ther person" requirement of the *Jewett* case because it did not then appear that the defendant had not been involved in any of the other fires. Contrast *Commonwealth* v. *Keizer*, 377 Mass. 264, 268 (1979); *Commonwealth* v. *Walker*, 14 Mass. App. Ct. 544, 552 (1982). The "similar crime" requirement was not met because it did

not appear that any of the other fires was of incendiary origin.[6] The same can be said of the "similar methods" requirement.

Other lacunae in the belated offer of proof (if we were to treat it as such) can be readily demonstrated, ones which are of no assistance to the defendant in his efforts to meet the "relevancy" requirement of *Jewett*. We think this case falls within the scope of the following, which is taken from *Commonwealth* v. *Murphy*, 282 Mass. 593, 597-598 (1933): "It is established law that to show that A did not do a particular thing, evidence is admissible to show that some one other than he did it, or had motive, intent, opportunity and is as likely as A to have done it. . . Before such evidence is admitted, however, it must be shown to be not too remote in time. . . not too weak in probative quality. . . and so connected with the events on which A's responsibility is predicated as to indicate that it is closely related to the facts of the case against A. . . Whether it meets these conditions must be decided, in the first place, by the trial judge. The admission or rejection rests in his judicial discretion, and the result of his exercise of that discretion will not ordinarily be disturbed by an appellate court" (citations omitted).

The order denying the motion for a new trial and the judgments are affirmed.

*So ordered.*

---

[6] The reader will have in mind that only one of the four(?) fires in the building in question was labeled "suspicious." Whether that fire was of incendiary origin was matter of speculation.