### STATE OF CONNECTICUT *v.* WINSTON ECHOLS
### (12716)

PETERS, C. J., SHEA, DANNEHY, SANTANIELLO and CORRIGAN, Js.

Argued January 6—decision released May 5, 1987

*Kenneth Rosenthal,* assistant public defender, with whom, on the brief, were *Donald Dakers* and *Joette Katz,* public defenders, and *Joseph G. Bruckmann,* assistant public defender, for the appellant (defendant).

*Judith Rossi,* deputy assistant state's attorney, with whom, on the brief, were *Guy W. Wolf III* and *James G. Clark,* assistant state's attorneys, for the appellee (state).

SANTANIELLO, J. The defendant, Winston Echols, was found guilty by a jury of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A)[1] and of sexual assault in the first degree in violation of General Statutes § 53a-70 (a).[2] He received a total effective sentence of twenty years. On appeal, he claims that the trial court erred in: (1) excluding evidence of a third party lookalike who had committed a similar crime in the vicinity of the present crime; (2) precluding cross-examination on a contemporaneous misidentification of the defendant; (3) refusing to strike the victim's as well as a police officer's testimony despite the destruction of the victim's taped statements; (4) failing to grant the defendant a conclusive presumption with respect to physical evidence consumed in tests performed by the state, precluding the defendant from calling a witness to testify to the circumstances surrounding the transfer of the physical evidence and failing to preclude the state from relying on the second set of test results; (5) failing to suppress the out-of-court identification of the defendant or, in the alternative, failing to give an instruction on drawing an adverse inference with

[1] "[General Statutes] Sec. 53a-92. KIDNAPPING IN THE FIRST DEGREE. "(a) A person is guilty of kidnapping in the first degree when he abducts another person and when . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually."

[2] "[General Statutes] Sec. 53a-70. SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY: ONE YEAR NOT SUSPENDABLE. (a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person."

respect to that identification; and (6) denying his motions for acquittal and for a new trial premised on claimed prosecutorial misconduct. We find error on the defendant's first claim and remand the case for a new trial. We therefore need not consider the defendant's remaining claims of error.[3]

The facts relevant to the disposition of this appeal are as follows: On August 13, 1984, B, a female college student, was walking home from work at approximately 9:30 p.m. As she walked by the Prince Street School, an abandoned elementary school near the corner of Church Street South and Prince Street in New Haven, she was grabbed from behind, threatened with a knife placed to her throat and dragged over a grassy area to several bushes near the school, where she was sexually assaulted. The area was fairly well lit, and B was able to get a good look at her assailant, whom she described as a dark-complexioned black male, between the age of twenty-three and thirty years old, approximately five feet seven to five feet nine inches tall with a short "afro" haircut, large lips and a "Neanderthalish," protruding brow bone.

Four days after the assault, B went to the New Haven police department for the purpose of viewing photographs in an attempt to identify her assailant. While at the station, she was asked by Detective Anthony DiLullo to examine two ring bound volumes, or "trays," of photographs. Each tray, organized according to a type of crime, contained approximately 200 photo-

---

[3] The defendant's remaining claims of error need not be discussed at this time because a determination of error on any of these claims would result in a new trial, which already has been granted. We note that the defendant also claims the trial court erred in denying his motions for acquittal. The defendant's motions, however, were not premised on the insufficiency of the evidence, but rather on claims of alleged prosecutorial misconduct. It appears that this claim, if meritorious, would warrant, at best, a reversal of the conviction and a new trial. Therefore, we need not address this claim.

graphs of black males, with each page containing a maximum of four photographs. The first tray, No. 29, contained photographs of persons charged with burglary, while the second tray, No. 116, was a "general crime" tray. B selected a photograph of the defendant from the first tray, but was unable to identify the defendant positively as her assailant because she felt the skin tone of the person in the photograph was too light. She did, however, positively identify the defendant as her assailant from a more recent photograph chosen from the second tray. Based on this identification, the defendant was arrested.

Approximately six months prior to this incident, on February 9, 1984, another woman, H, had been sexually assaulted in her apartment located in the general vicinity of where the August 13 assault had occurred. At that time, H described her assailant as a dark-complexioned black male, about five feet eight inches tall with a thin build, short hair and very thick lips. She subsequently remembered that her assailant had a "large forehead bone" which made his eyes appear to be set forward.

After B positively identified the defendant from his photograph, DiLullo contacted H, suspecting that the defendant had been the assailant in the February assault. DiLullo requested that H accompany him to the police department to view photographs. There, H was shown tray No. 116, the second photo tray shown to B, and from that tray, H positively identified the defendant, stating that there was no doubt in her mind that he was her assailant. The defendant was subsequently charged with the February assault. The defendant, however, could not have committed this crime because he was incarcerated in the Hartford Correctional Center on February 9, 1984. Accordingly, the charges stemming from the February incident were nolled.

At trial, the defendant attempted to introduce evidence of H's misidentification of the defendant, first during the cross-examination of DiLullo and then later during his case-in-chief. The trial court, however, refused to allow the defendant to introduce the misidentification into evidence on either occasion.

For the disposition of this appeal, we need only discuss the first claim of error proffered by the defendant; namely, that the trial court erred in precluding evidence of a third party lookalike who had committed a similar crime.

At trial, defense counsel attempted to introduce evidence of H's identification during cross-examination of Detective DiLullo in an attempt to discredit the photo identification procedure concerning the August assault. Counsel claimed that because H had identified the defendant as her assailant in the February incident when, in fact, the defendant could not have committed the assault due to his incarceration at that time, the identification procedure was suspect.[4] The state

---

[4] "Mr. Rosenthal: With respect to my line of cross-examination of this witness in a case involving identification as the key issue . . . [t]he identification procedure is essential. I have reason to believe the descriptions in terms of the affidavits that are a part of the court record already in each of the arrest warrants are very similar. Indeed, this officer concluded, based on the description in both cases, that they were the same individual. The search warrant that was requested by this officer was requested in both cases at the same time with the representation to the court that they had occurred in close proximity and, in effect, they were committed by the same individual, and yet we have—it's really a classic case of how an identification procedure, through no fault perhaps of anybody, can go awry, and it's the very same tray, the very same photograph, the very same month, the very same neighborhood, the very same description, the very same officer conducting the photo identification at the very same police station, and I think the Jury should be entitled to know, in deciding whether to convict my client based on the identification from tray 116 on August 17th, in part to convict him on that basis, they are entitled to know that on a subsequent day, I think it was August 23rd, something like that, a positive identification was made by another non-white complainant in a sexual assault case occurring in the same general vicinity as this assault occurred, in close prox-

objected, and the trial court sustained the objection, ruling that any subsequent misidentification was completely irrelevant to this case.[5]

During this discussion, defense counsel indicated that he wished to introduce this evidence as part of his case-in-chief in order to prove that another individual fitting the description of the defendant might have committed the assault. The defendant's attorney argued that because the descriptions of the February and August assailants were so similar that DiLullo suspected the same person had committed both crimes, and because H had mistakenly identified the defendant from the same photograph that B used to identify the defendant, there could have been a third party lookalike who had committed both crimes.[6] Again, the trial

imity, to quote Detective DiLullo's words in the affidavit, and that it subsequently turned out that my client was locked up tight in Hartford Correctional Center on the date that that identification, that incident occurred. I think they are entitled to know that the identification procedure on which the State is hinging its case broke down, was wrong, where they can be shown to be wrong, and I think they have to have that piece of information in order for them to make a decision in this case."

[5] "The Court: Counselor, I don't think you need to refer to anymore cases. As far as this Court is concerned, it appears to me that what you are attempting to do at this point means absolutely nothing to this particular identification. It is entirely irrelevant as far as I am concerned, and the objection on the part of the State is sustained.

"Mr. Rosenthal: I take exception.

"The Court: You certainly may take an exception. You are not going to go into the question of any subsequent identifications, wrongful or otherwise."

[6] "Mr. Rosenthal: The other claim that we made . . . is that evidence that another individual fitting the description the individual described in this case, this incident, which bears sufficient similarity to connect the two, the assailant in both cases as being the same person, is admissible in a Connecticut criminal trial. . . . [I]f Your Honor will bear with me just a moment, the similarit[ies] in description, to the extent I am aware of them at this point, include a claim that was, in the affidavit at least, short hair, that the individual was five foot nine, that he had large lips, that both incidents occurred, again to quote the officer, in the officer's own affidavit in the second case, in close proximity to each other, both individuals had a dark complexion. I think the description is five foot eight in the second

court ruled the evidence inadmissible, stating that it was irrelevant.[7]

The defendant claims that the trial court erred in refusing to allow the defendant to introduce evidence of H's misidentification in his case-in-chief. We agree.[8]

statement. Based on the officer's investigation of these two cases, he felt that the same individual was involved such that he came into the court on August 29th with an arrest warrant affidavit in the second case, and I think based on those similarities, the fact that the victim—these are both violent sexual assaults, the fact that the victim in both cases is non-white, it is true, one occurs inside, one occurs outside, but we have to keep in mind the one that occurred outside occurred in the heat of August, and the one inside occurred in the cold of winter. There is reason on the record that is already available to permit the defendant, I claim, to present this information to the Jury for their consideration. It may be that they will decide that that is not the ultimate determinant, but that's a question, it seems to me, for a Jury and something that the defendant should have a right to present.

\* \* \*

"[T]here are enough similarities to get to the threshold of a defendant in a serious criminal case, in any criminal case, would be entitled to bring that information before the Jury for their use in making the difficult decision."

[7] "The Court: Counselor, the Court is going to sustain the objection to your attempt to introduce any evidence of that nature. As far as this Court is concerned, this case is going to be determined by this Jury based on the identification procedures that they have heard. Anything else that may have happened afterwards as far as I'm concerned is completely irrelevant to this particular case, so when and if that opportunity arises that you attempt to present that type of evidence and there is an objection, the Court will sustain the objection. You may have an exception at the appropriate time."

During the presentation of his defense, the defendant attempted to introduce the police records concerning the description of the February assailant in order to prove the existence of a third party lookalike. Again, the court refused to admit such evidence.

[8] The state claims that the defendant failed to make a proper offer of proof because he failed to call H, the victim of the February assault, to the stand. Defense counsel's description of the misidentification evidence, however, was enough to call the trial court's attention to its relevancy. In light of the trial court's unequivocal adverse rulings; see footnotes 4, 6, supra; we conclude that the defendant was not required to call H to the stand. Cf. *State* v. *Conroy,* 194 Conn. 623, 629 n.8, 484 A.2d 448 (1984); *Commonwealth* v. *Jewett,* 392 Mass. 558, 562, 467 N.E.2d 155 (1984).

A defendant's right to present witnesses and offer evidence is a fundamental element of due process of law. *Washington* v. *Texas,* 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); see *Chambers* v. *Mississippi,* 410 U.S. 284, 294, 302, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). Both this state and other jurisdictions have recognized that a defendant may introduce evidence which indicates that a third party, and not the defendant, committed the crime with which the defendant is charged. See, e.g., *State* v. *Burge,* 195 Conn. 232, 252, 487 A.2d 532 (1985); *Siemon* v. *Stoughton,* 184 Conn. 547, 555-56, 440 A.2d 210 (1981); *State* v. *Giguere,* 184 Conn. 400, 405, 439 A.2d 1040 (1981); *State* v. *Gold,* 180 Conn. 619, 646, 431 A.2d 501, cert. denied, 449 U.S. 920, 101 S. Ct. 320, 66 L. Ed. 2d 148 (1980); *State* v. *Marshall,* 166 Conn. 593, 601, 353 A.2d 756 (1974); see also *United States* v. *Armstrong,* 621 F.2d 951, 953 (9th Cir. 1980); *Pettijohn* v. *Hall,* 599 F.2d 476, 480 (1st Cir.), cert. denied, 444 U.S. 946, 100 S. Ct. 308, 62 L. Ed. 2d 315 (1979); *United States* v. *Robinson,* 544 F.2d 110, 113 (2d Cir. 1976), cert. denied, 434 U.S. 1050, 98 S. Ct. 901, 54 L. Ed. 2d 803 (1978); *Holt* v. *United States,* 342 F.2d 163, 165-66 (5th Cir. 1965); *People* v. *Flowers,* 644 P.2d 916, 918 (Colo.), appeal dismissed, 459 U.S. 803, 103 S. Ct. 25, 74 L. Ed. 2d 41 (1982); *Kucki* v. *State,* 483 N.E.2d 788, 791 (Ind. App. 1985); *Commonwealth* v. *Jewett,* 392 Mass. 558, 562, 467 N.E.2d 155 (1984).The defendant, however, must show some evidence which directly connects a third party to the crime with which the defendant is charged; *Siemon* v. *Stoughton,* supra; *State* v. *Giguere,* supra. It is not enough to show that another had the motive to commit the crime; *State* v. *Marshall,* supra; *State* v. *Perelli,* 125 Conn. 321, 328, 5 A.2d 705 (1939); nor is it enough to raise a bare suspicion that some other person may have committed the crime of which the defendant is accused. *Brown* v. *State,* 275 Ind. 227, 231, 416 N.E.2d 828 (1981).

The presentation and admissibility of such evidence is governed by the rules of relevancy. See *State* v. *Burge,* supra; *State* v. *Giguere,* supra, 405–406; *State* v. *Gold,* supra, 645–46; *State* v. *Marshall,* supra, 601–602; see also *Commonwealth* v. *Jewett,* supra; cf. *Chambers* v. *Mississippi,* supra, 302. We have often stated that "[e]vidence is admissible when it tends to establish a fact in issue or to corroborate other direct evidence in the case. . . . 'One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable. . . . Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue. Evidence is admitted, not because it is shown to be competent, but because it is not shown to be incompetent. No precise and universal test of relevancy is furnished by the law, and the question must be determined in each case according to the teachings of reason and judicial experience.' *Pope Foundation, Inc.* v. *New York, N.H. & H. R. Co.,* 106 Conn. 423, 435, 138 A. 444 [1927]." *State* v. *Towles,* 155 Conn. 516, 523, 235 A.2d 639 (1967); see also *State* v. *Boucino,* 199 Conn. 207, 228, 506 A.2d 125 (1986); *State* v. *McClendon,* 199 Conn. 5, 8–9, 505 A.2d 685 (1986); *State* v. *Sharpe,* 195 Conn. 651, 659, 491 A.2d 345 (1985); *State* v. *Gold,* supra. Although the trial court has wide discretion in its rulings on the relevancy of evidence; *State* v. *McClendon,* supra, 8; *State* v. *DeForge,* 194 Conn. 392, 396, 480 A.2d 547 (1984); its rulings will be reversed if the court has abused its discretion or where injustice appears to have been done. *State* v. *Smith,* 198 Conn. 147, 157, 502 A.2d 874 (1985); *State* v. *Johnson,* 190 Conn. 541, 548–49, 461 A.2d 981 (1983); see *State* v. *Gold,* supra, 646.

In the present case, justice requires that the proffered evidence of H's misidentification be admitted. In a case

such as this, where the identity of the assailant is essentially the sole issue at trial, evidence that a third party lookalike may have committed the crime with which the defendant is charged is highly relevant. Here, the assailants in both the February and August assaults were similarly described, both assaults occurred in the same neighborhood, and, most importantly, each victim positively identified her assailant from the same photograph of the defendant, although the defendant could not have committed the February crime. H's mistaken identification is probative on the issue of whether there existed a third party lookalike who may have committed the August crime. Taken in the totality of the circumstances, such evidence raises more than a bare suspicion that another may have committed the August assault; it is evidence which would have aided the trier of fact in determining the issue of the August assailant's identity. Thus, the trial court erred in refusing to allow the defendant to present this evidence in his case-in-chief.

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other justices concurred.