[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM
The Supreme Court has remanded this case for an in camera inspection of any written reports of inmate interviews by Trooper Buturla at the jail's Fairmont unit.[1] This court was ordered to determine: (1) whether his report is a statement under P.B. 749; (2) if so, whether all or any portion of the statement contains material which should have been disclosed; and (3) if so, whether the nondisclosure was harmful to the defendant because the defendant was prejudiced by that nondisclosure. The Supreme Court stated that "if any of the questions are answered in the negative, a new trial on that charge [of arson] is not necessary."
The court answers those questions as follows:
1. Yes.
2. Yes, but only in part.
3. No.
Trooper Buturla testified at a recent hearing that he CT Page 46 reviewed his file and found three reports regarding interviews at the Fairmont unit of the jail, and that they were all he had. They have been marked Court's exhibit 1, Court's exhibit 2, and Court's exhibit 3. All have been sealed for possible review by the Supreme Court. Additionally, the court, with counsel's agreement, reviewed the transcript of Buturla's testimony.
Both counsel conceded at the hearing that Court's exhibits 2 and 3 are not relevant to this remand and that they may be ignored by the court. As to Court's exhibit 1, the parties disagree. The state concedes that exhibit 1 is a statement under 749. However, it contends that: (1) it need not be turned over to the defendant under our rules; and (2) it would not, in any event, affect the outcome, and therefore, its nondisclosure was not prejudicial. The defendant argues to the contrary. The court agrees with the State of Connecticut.
Court's exhibit 1 concerns a conversation with an inmate named Bell at the Fairmont unit of the jail. It concerns three separate subjects: (1) information about Mr. Commerford's possession of drugs while in jail; (2) a conversation that Bell had with an inmate named Zelinksky; and (3) Bell's comments regarding an argument Commerford allegedly had at the Fairmont unit with another black inmate.
 I
As to the first subject covered by Court's exhibit 1, the possession of drugs:
1. The court agrees that exhibit 1 is a statement under 749.
2. This part of exhibit 1 does not relate to the subject matter of the testimony of the witness on direct examination, and, therefore, it is not something which should have been disclosed to the defendant under P.B. 752 which limits the production of statements after direct examination to a statement which "relates to the subject matter about which the witness has testified." The subject was brought up on cross-examination.
3. The court notes that both counsel conceded, as they must, that the subject of Commerford's possession of drugs while in jail came into the case through another witness. Therefore, the court finds that this material was, at best, cumulative. Disclosure of this material was not required. But even if it had been, the defendant was not prejudiced.
As to Bell's conversation with Zelinsky: CT Page 47
1. As indicated, exhibit 1 is a statement under 749.
2. Bell related to Buturla that Zelinsky told him that the Jamaican (the defendant, Roy King) set Commerford on fire, and then Bell related how Zelinsky said it had been done by King.
 This part of the statement did relate to Buturla's testimony on direct examination and, therefore, should have been disclosed to the defendant.
Additionally, defense counsel's stated reason at trial for securing this material (see transcript) was to attempt to show third party involvement in the crime. But this argument falls because there is not a scintilla of evidence in any way linking the black inmate to the crime. Without linkage, any such third party involvement evidence is inadmissible under our Supreme Court's rulings in cases such as State v. Milner,206 Conn. 512, 517, and State v. Echols, 203 Conn. 385, 392-93.
CONCLUSION
Finally, because the question of prejudice is present, the court notes that this was not just a case of circumstantial evidence. There was highly damaging testimony from the defendant's own friend, an inmate named Barnes, which actually quoted the defendant's statements: (1) that he intended to set Commerford's cell on fire; and (2) that he considered himself to be a revolutionary who could do anything he wanted to advance his purposes. Barnes portrayed the defendant as a highly dangerous person who considered himself above the law, a fact which he confirmed when he attacked a much smaller witness in the lockup after that witness testified against him. It was also obvious that the jury disbelieved the defendant's own testimony. I believe the court observed at sentencing that his own testimony hurt him and that he was his own worst enemy.
None of the material in Court's exhibit 1 could, in the opinion of the court, overcome the strong, negative force of the testimony of Barnes and the defendant himself, when it was combined with what was a rather complete web of circumstantial evidence. Together, they were very strong. This was not a close case, and nothing in Court's exhibit 1 could have affected the outcome, in the opinion of the court.
In summary, most of the material in Buturla's statement need not have been disclosed to the defendant, and the small portion that he had a right to see was cumulative and highly inculpatory. Under all these circumstances, the court believes that the failure to disclose was not prejudicial to the CT Page 48 defendant.
SAMUEL S. FREEDMAN, JUDGE