COMMONWEALTH vs. EDUARDO A. CARDOZA

No. 90-P-123.

Norfolk. October 9, 1990. - December 20, 1990.

Present: WARNER, C.J., KASS, & IRELAND, JJ.

*Evidence*, Relevancy and materiality, Sexual conduct. *Error*, Harmless. *Indecent Assault and Battery. Rape-Shield Statute. Identification.*

At the trial of indictments charging indecent assault and battery and as-
   sault and battery in which a dispute arose over the exclusion of a foren-
   sic laboratory report, containing an analysis that a foreign pubic hair
   recovered from the victim's hospital specimen was dissimilar from the
   pubic hair sample taken from the defendant, there was reversible error
   in excluding the comparison evidence, where such exclusion deprived
   the defendant of both the opportunity to present evidence directly rele-
   vant to the issue of misidentification, and the opportunity to present a
   full defense. [647-650]

INDICTMENTS found and returned in the Superior Court Department on August 18, 1988.

The cases were tried before *Suzanne V. DelVecchio*, J.

*Murray Kohn* for the defendant.

*James F. Lang*, Assistant District Attorney, for the Commonwealth.

IRELAND, J. This case comes to us after two trials, and involves a dispute over the exclusion of comparison evidence of a foreign pubic hair. In the first trial, in which the trial judge admitted the evidence, the jury was unable to reach a verdict. In the second trial, in which the trial judge excluded the evidence, the defendant was found guilty of indecent assault and battery and assault and battery. He appeals, argu-
ing — we think persuasively — that the exclusion of the evi-
dence in the second trial deprived him of the opportunity to present a complete defense. We reverse the convictions.

Although the victim and the defendant offered crucially different versions of how each came to be in the area where they were found by the police,[1] there are, nonetheless, certain basic facts that are not in dispute. In July of 1988, police found a woman, beaten and bloody, in Amory Park in Brookline. They also found the defendant in a car at the scene, as he was attempting to drive away. He had blood on his clothes and in his car, and the victim's purse was found in the back seat of his car. At some point, the victim passed out, and when she came to, the police had arrived. An officer asked her what had happened, and she pointed in the direction of the defendant and stated, "That man beat me up." There were no other witnesses. Both the victim and the defendant had been drinking, although not together. The victim was taken to Beth Israel Hospital, where an examination showed that she had not been penetrated by her assailant; however, a combing of her pubic area revealed a foreign pubic hair, dissimilar from her own. It was this single pubic hair that would become the subject of this appeal: four months later, after allowance of the Commonwealth's motion for samples of blood, saliva, and hair of the defendant, a forensic chemist determined that the pubic hair found on the victim was dissimilar to that of the defendant.

On April 10, 1989, a jury was empanelled for trial of the defendant on six charges.[2] On that same day, the Commonwealth's motion in limine to exclude evidence or mention of the pubic hair was denied. On April 12, the trial judge admitted in evidence a forensic lab report, containing an analysis that a foreign pubic hair recovered from the victim's hospital specimen was dissimilar from the pubic hair sample

---

[1] The victim testified that she had accepted a ride from the defendant and that he had attacked her when she refused to "have sex" with him. The defendant testified that the victim was beaten and bloody when she approached him, and that he was about to get help for her when the police arrived.

[2] The charges were unarmed robbery, indecent assault and battery upon a person who has attained the age of fourteen years, assault with intent to commit rape, assault and battery by means of a dangerous weapon, assault and battery, and operating a motor vehicle while under the influence of intoxicating liquor.

taken from the defendant. The trial judge then allowed the defendant's motion in limine to prohibit the forensic chemist from speculating about the origin of the foreign pubic hair and to limit her testimony to the results of her scientific examination. After two days of jury deliberation, the judge declared a mistrial as to most of the charges because the jury could not reach a verdict.[3]

A second trial on the remaining five charges was held in October, 1989. The Commonwealth again sought to exclude evidence about the foreign pubic hair. The judge deferred ruling on the issue, waiting to hear the complainant's testimony.[4] Thereafter, the judge allowed the Commonwealth's motion in limine, and excluded the evidence on the ground of lack of relevance. The defendant testified in his own behalf. He was found not guilty of assault with intent to rape and assault and battery by means of a dangerous weapon. He was found guilty of indecent assault and battery and assault and battery.

We must determine whether exclusion of the pubic hair comparison evidence was error and, if so, whether the error was harmless beyond a reasonable doubt. See *Commonwealth* v. *Mandeville*, 386 Mass. 393, 400 (1982). In order to be admissible, evidence must, as a primary consideration, be relevant, i.e., have a tendency to "render[] the desired inference more probable than it would have been without it" (citations omitted). *Commonwealth* v. *LaSota*, *ante* 15, 24 (1990). To be relevant, the evidence must be shown to have a

---

[3]The judge allowed a motion for a required finding of not guilty on the unarmed robbery indictment. The jury found the defendant guilty of operating a motor vehicle while under the influence of intoxicating liquor, and he was sentenced to six months in a house of correction.

[4]The victim testified that, after an evening of eating and drinking at an impromptu farewell party, she boarded the subway to go home. Feeling ill, she got off the train earlier than she had intended. She was approached by a man from whom she eventually accepted a ride. She passed out in his car, and when she came to, the driver said he would take her home but first she would "have sex" with him. She refused, and a struggle ensued. She felt blows to her ribs, stomach, lower body, knees, and feet. She related that her attacker ripped her clothes off her and grabbed her between her legs. She did not remember if her attacker removed his pants.

sufficient nexus with the crime charged.[5] "Indecent assault and battery" has been defined as "an act or series of acts which are fundamentally offensive to contemporary moral values." *Commonwealth* v. *Perretti*, 20 Mass. App. Ct. 36, 43-44 (1985). An unauthorized touching of the victim's genital area would, of course, constitute an indecent assault and battery under G. L. c. 265, § 13H. See *Commonwealth* v. *De La Cruz*, 15 Mass. App. Ct. 52 (1982). Microscopic hair evidence has probative value for the purpose of excluding "persons from consideration as the source of . . . hair[] found on . . . the victim's body." *Commonwealth* v. *Tarver*, 369 Mass. 302, 310-311 (1975). The pubic hair evidence, therefore, had relevance.

We look next to whether the evidence was properly excluded on other grounds. The Commonwealth argues that admission of the evidence would subvert the policy underlying G. L. c. 233, § 21B, the Rape Shield Law. That statute requires the exclusion of evidence of a victim's reputation and of specific instances of a victim's sexual conduct, unless the evidence is of "sexual conduct with the defendant or evidence of recent conduct of the victim alleged to be the cause of any physical feature, characteristic, or condition of the victim." G. L. c. 233, § 21B, as amended by St. 1983, c. 367. *Commonwealth* v. *Joyce*, 382 Mass. 222, 225 n.3 (1981). Application of the statute involves a careful balance between an accused's right to confront witnesses and "eliminating a common defense strategy of trying the complaining witness rather than the defendant." *Id.* at 228. The defendant did not seek to introduce the evidence to show the complainant's sexual behavior. He sought to introduce it to show

_____

[5]In view of the state in which the victim was found — her shorts were on inside out, her face was severely beaten, she was bruised on her knee and her ankle, and she was covered with blood — and the Commonwealth's closing argument, characterizing the incident as a sexual assault, we think a question was implicitly raised about whether the victim's attacker effected genital contact with her. All charges the defendant faced stemmed from the same incident. While he was found not guilty of assault with intent to rape, the common origin of the charges requires viewing the evidence as relevant to the remaining charges, notwithstanding the two not guilty verdicts.

that another, not he, attacked the victim. "No positive rule of law other than normal considerations of relevancy stands in the way of the admission of misidentification evidence." *Commonwealth* v. *Jewett*, 392 Mass. 558, 562 (1984). "When a defendant offers exculpatory evidence regarding misidentification, prejudice ceases to be a factor, and relevance should function as the admissibility standard." *Id.* at 563. That the Commonwealth asked for the hair identification — thinking it possibly relevant — makes the point that much more sharply.

Having determined that exclusion of the pubic hair comparison evidence was error, we turn next to the issue of whether that error was harmless beyond a reasonable doubt. It has been held to be harmless error, for example, where "the information the defendant unsuccessfully sought to elicit on cross-examination reached the jury through other means." *Commonwealth* v. *Horn*, 23 Mass. App. Ct. 319, 323 (1987). Here, meaningful evidence about the foreign pubic hair could only have reached the jury through the Commonwealth's forensic chemist. Cf. *Smith* v. *Commonwealth*, 331 Mass. 585, 591 (1954) (some circumstances may require the Commonwealth to direct the court's attention to evidence favorable to defendant).

Moreover, in *Commonwealth* v. *McNickles*, 22 Mass. App. Ct. 114, 118-119 (1986), this court noted that "[e]vidence of statements favorable to the defendant coming from the lips of the witnesses for the prosecution would be apt to be given complete credence by the jury, whereas coming from the defendant alone, they might be viewed with the suspicion that they were of later invention." The evidence here not only would have been favorable to the defendant, but, as it involved physical evidence that was discovered and analyzed by the Commonwealth, it could have had considerable weight in the jury's decision-making process.

The exclusion of the foreign pubic hair comparison evidence deprived the defendant of both the opportunity to present evidence directly relevant to the issue of misidentifica-

tion, and the opportunity to present a full defense. See *Commonwealth* v. *Bohannon*, 376 Mass. 90, 94 (1978).

*Judgments reversed.*

*Verdicts set aside.*