ALFRED TRUMPOLD ET AL. *v.* ROBERT J. BESCH ET AL.
(6758)

DUPONT, C. J., DALY and JACOBSON, Js.

Argued March 2—decision released June 15, 1989

*Richard L. Jacobs,* with whom were *Ina L. Silverman, John M. Shannon,* legal intern, and, on the brief, *Steven D. Jacobs,* for the appellants (plaintiffs).

*William F. Gallagher,* with whom were *Terence A. Zemetis* and, on the brief, *Elizabeth A. Gallagher,* for the appellees (defendants).

JACOBSON, J. This is a negligence action brought in 1983 by Alfred Trumpold, claiming damages for injuries he sustained in an automobile accident, and by his wife, Linda, for loss of consortium.[1] The complaint alleged that an automobile, owned by the defendant Douglas Battery Corporation and driven by the named defendant, collided with the rear of the plaintiffs' vehicle while it was stopped at a traffic light. The defendants' answer included a special defense of contributory negligence.

The jury returned a verdict for Alfred Trumpold, finding the defendants 90 percent negligent and Alfred Trumpold 10 percent negligent, and awarding him a total of $1485.10. The jury also returned a verdict for Linda Trumpold, but awarded zero damages. After the trial court ordered the jurors to reconsider their verdicts, they returned with the same verdict and award

---

[1] Linda Trumpold's claim for damages for injuries was removed from the jury's consideration by the court because she failed to establish that she had sustained expenses in excess of $400, as required by General Statutes § 38-323.

for Alfred Trumpold but changed their verdict as to Linda Trumpold to a verdict for the defendants. The plaintiffs moved to set aside the verdict, for a new trial, and for additur. After oral argument, the court denied the motions and rendered judgment in accordance with the verdicts.

The plaintiffs appeal from the judgment rendered on the verdicts and from the trial court's denial of their posttrial motions, claiming that the trial court erred (1) in permitting defense counsel to ask allegedly improper questions of the plaintiffs during trial and to refer to that testimony during summation, (2) in making an improper remark while instructing the jury, (3) in permitting defense counsel to make other improper, inflammatory and prejudicial remarks to the jury during summation, and (4) in rendering judgment on the jury's verdicts because they were against the weight of the evidence. We find no error.

The plaintiffs' initial claim is that the trial court erred when it permitted defense counsel to ask the plaintiffs when they had first contacted an attorney after the accident. The essence of their argument is that once the plaintiffs testified that they had contacted their attorney soon after the accident, the jury would believe that something improper had transpired with regard to the plaintiffs' pursuit of their claims in court. They argue that the questions were irrelevant, and that defense counsel's reference to the plaintiffs' responses to the questions during summation invaded the attorney-client privilege and violated their federal and state constitutional rights to counsel. We disagree.

First, turning to whether the trial court erred in permitting the questions over objection because they were irrelevant, we note at the outset that trial courts are given broad discretion in determining the relevancy of evidence; *State* v. *Boucino,* 199 Conn. 207, 225, 506

A.2d 125 (1986); and that their "rulings will be reversed [only] if the court has abused its discretion or where injustice appears to have been done." *State* v. *Echols,* 203 Conn. 385, 393, 524 A.2d 1143 (1987), citing *State* v. *Smith,* 198 Conn. 147, 157, 502 A.2d 874 (1985); *State* v. *Johnson,* 190 Conn. 541, 548–49, 461 A.2d 981 (1983).

"Evidence is relevant only when it tends to establish the existence of a material fact in issue or to corroborate other direct evidence in the case." *State* v. *Talton,* 197 Conn. 280, 285, 497 A.2d 35 (1985). " ' "Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue. Evidence is admitted, not because it is shown to be competent, but because it is not shown to be incompetent. No precise and universal test of relevancy is furnished by the law, and the question must be determined in each case according to the teachings of reason and judicial experience." *Pope Foundation, Inc.* v. *New York, N.H. & H.R. Co.,* 106 Conn. 423, 435, 138 A. 444 [1927].' *State* v. *Towles,* 155 Conn. 516, 523, 235 A.2d 639 (1967)." *State* v. *Echols, supra.*

The following additional facts are relevant to this claim. During the trial, the jury reviewed a videotaped deposition of Linda Trumpold.[2] Before it was shown to the jury, counsel for the plaintiffs argued to the court, out of the presence of the jury, that defense counsel's cross-examination question, "Did you call Mr. Jacobs that night [after the accident] or the day after?" was irrelevant and the court should not allow the jury to review that portion of the videotape. The court overruled the objection and the jury reviewed that testimony. The plaintiffs argue that similar, improper questioning by defense counsel occurred during his cross-examination of the plaintiff Alfred Trumpold

---

[2] Linda Trumpold suffered from agoraphobia and could not testify in court.

when he asked, "Is it your recollection that [your wife Linda] called Attorney Jacobs that night or the next morning?"

The plaintiffs argue that defense counsel asked these questions in order to encourage the jurors to infer that the plaintiffs' attorney guided them in pressing their claim to fullest advantage, and to play upon the public's mistrust of attorneys. The defendants counter that the testimony of the parties concerning the force of the impact of the colliding vehicles and the severity of resulting injury was so disparate that the jury was entitled to examine this testimony. The defendants contend that Alfred Trumpold could not have been and was not injured whereas Alfred Trumpold claims he was severely injured. The defendants argue that the court properly allowed the evidence because Linda Trumpold's actions following the accident tended to corroborate the defendants' version of the occurrence, because Alfred Trumpold did not seek medical assistance immediately following the accident, but instead consulted an attorney.

After reading the transcripts and considering all other relevant information, we agree with the defendants that asking the plaintiffs when they first contacted their attorney following the accident was permissible on these particular facts. Under other factual circumstances, such evidence might be inadmissible.

"The trial court enjoys a liberal discretion in fixing the limits of cross-examination, particularly if it affects credibility. *State* v. *Croom,* 166 Conn. 226, 231, 348 A.2d 556 (1974); *State* v. *Marquez,* 160 Conn. 47, 52, 273 A.2d 689 (1970)." *State* v. *Ouellette,* 190 Conn. 84, 101–102, 459 A.2d 1005 (1983). "Cross-examination, in quest for the truth, provides a means for discrediting the testimony of a witness. 'When pursued for that purpose, the examination frequently and legitimately

enters into matters collateral to the main issues.' *Hirsch* v. *Vegiard,* 137 Conn. 302, 304, 77 A.2d 85 (1950). . . . Given that function of cross-examination in shedding light on the credibility of the witness' direct testimony, '[t]he test of relevancy is not whether the answer sought will elucidate any of the main issues, but whether it will to a useful extent aid the court or jury in appraising the credibility of the witness and assessing the probative value of the direct testimony.' McCormick, Evidence (2d Ed.) § 29." *State* v. *Ouellette,* supra, 102.

The trial court, in its discretion, could have concluded that the information was useful to the jury in assessing the parties' testimony concerning the nature of the accident, and on cross-examination the defendants were entitled to demonstrate to the jury apparent weaknesses in the plaintiffs' testimony educed during direct examination. The trial court did not abuse its discretion in making that evidentiary ruling and we do not find that injustice occurred as a result of that ruling.

The plaintiffs next argue that, during defense counsel's summation to the jury, reference to the plaintiffs' having called an attorney violated the attorney-client privilege.[3] They cite *Rienzo* v. *Santangelo,* 160 Conn. 391, 396, 279 A.2d 565 (1971), which held, in the specific factual context of that case, that a court's ordering a witness to answer the question "Did you tell your attorney where on the premises this accident occurred?" improperly invaded the scope of the privilege.

---

[3] The plaintiffs take issue, inter alia, with the following language: "Now, what they do from that scene of the accident I think is important. They drive home, they sit down and they start calling people. And among the people they call that evening or the next morning are the grandfather, apparently and it's assumed, and they call the police station and they call their lawyer."

In *State* v. *Manning,* 162 Conn. 112, 120, 291 A.2d 750 (1971), our Supreme Court held that Connecticut "is in accord with the majority rule that the [attorney-client] privilege does not extend beyond communications"; therefore, "an attorney is not bound to remain silent as to all information regarding his client, but only as to that information born of confidential communication." Id., 121. Additionally, "since the privilege tends to prevent a full disclosure of the truth in court, it will be strictly construed. *Turner's Appeal,* 72 Conn. 305, 318, 44 A. 310 (1899)." C. Tait & J. LaPlante, Connecticut Evidence (2d Ed.) § 12.5.1, p. 442; 2 B. Holden & J. Daly, Connecticut Evidence (2d Ed.) § 126d, pp. 1304–1305. Because our law is clear that the privilege applies only to "information born of confidential communication," we decline to hold that the trial court's evidentiary ruling that permitted defense counsel to ask the plaintiffs, as witnesses, when they first contacted their attorney violated the confidentiality of their privileged communications.[4] Therefore, defense counsel's summation remarks alluding to the plaintiffs' contacting their attorney did not violate the privilege.

The next claim of error proffered by the plaintiffs concerns an alleged impropriety in the trial court's charge to the jury. They argue that the court's comment to the jury at the close of its charge, that "you have some difficult issues to resolve,"[5] constituted

---

[4] In light of our holding that defense counsel's questions did not abridge the plaintiffs' attorney-client privilege, we decline to examine the plaintiffs' argument that, because their privilege was violated, so were their state and federal constitutional rights to counsel.

[5] The court made the remark in the following context: "Well, ladies and gentlemen, believe it or not I've gone through my outline and as far as I know I have not missed anything in my outline. I am going to let you go to lunch now. It's a quarter to two. I'll expect to be back at a quarter to three. And I may or may not have something else to say to you after I've talked to the attorneys. They are my monitors. They listen to what I have to say. If they think I made a mistake they are going to tell me about them. And if I think I made a mistake and I agree with them, I will tell you about

prejudicial error because, the plaintiffs contend, the case actually was simple, and the court's comment was prejudicial to them because it altered the burden of proof to the defendants' benefit. We disagree.

Our examination of the court's charge, in its entirety, leads us to conclude that the court did not err by stating that the jury had some difficult issues to resolve. The primary function of the charge to the jury is to assist them in applying the law correctly to the facts that they find to be established. *Magnon* v. *Glickman,* 185 Conn. 234, 244, 440 A.2d 909 (1981). Our Supreme Court has long held that courts are authorized to comment on evidence when charging the jury; *Heslin* v. *Malone,* 116 Conn. 471, 477, 165 A. 594 (1933); provided they do not misstate facts or evidence, and provided the comment is reasonable and fair. Id.; *Ladd* v. *Burdge,* 132 Conn. 296, 298, 43 A.2d 752 (1945). We do not view the comment as unreasonable or unfair; rather, it was within the trial court's discretion to make such a statement to emphasize to the jurors the seriousness of the factual questions they were to resolve.[6] This claim is without merit.

it; but I don't think I made a mistake. I won't tell you about it, but we do that because we want to carefully present the case to you. As both attorneys have said they both waited a long time for you to decide this case. And we want to give it to you in the best fashion we can. I join with the attorneys and thank you for the attention that you have given to the case. It's been an unusually long case. And you have been very attentive. You have some difficult issues to resolve. I hope I've pointed them out to you so that you don't waste your time on insubstantial issues and you get right to the heart of the matter, and you follow the procedure that I have suggested to you."

[6] We find credence in the the trial court's explanation for the remark, when it responded to the plaintiffs' claim of error in its memorandum of decision denying the plaintiffs' posttrial motions: "Looked at in the light of the evidence of [Alfred Trumpold's] preexisting serious back injury, a preexisting permanent disability, a long period of convalescence prior to returning to work [before the accident at issue in this case occurred] and a contradictory work history after returning to work after [a] disc operation, the jury did indeed have '*serious issues*' of fact to resolve in Alfred Trumpold's case." (Emphasis in original.)

The plaintiffs' third claim of error is that the trial court erred in allowing defense counsel to give a summation that was improper, inflammatory and prejudicial. Essentially, the plaintiffs argue that during closing argument, defense counsel drew attenuated inferences from testimony heard earlier, attempting to persuade the jury that the plaintiffs had exaggerated the extent of their injuries from the accident.

The transcript reveals that the plaintiffs failed to object during defense counsel's summation. In addition, the plaintiffs failed to request a curative instruction by the trial court. "The absence of any objection or exception to improper argument, which we may infer from the absence of any such indication in the transcript, has . . . been regarded as a waiver of the right to press such a claim of error." *State* v. *Austin,* 195 Conn. 496, 504–505, 488 A.2d 1250 (1985), citing *State* v. *Vitale,* 190 Conn. 219, 226, 460 A.2d 961 (1983); *Cascella* v. *Jay James Camera Shop, Inc.,* 147 Conn. 337, 343, 160 A.2d 899 (1960). See 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed.) § 12, p. 76. The failure to object to the remarks at the time they were made or at the close of argument constitutes a waiver of the plaintiffs' right to press this claim of error.

We reach this result after examining the plaintiffs' argument, raised for the first time in their reply brief, that the trial court's failure to limit defense counsel's allegedly improper comments constituted plain error.[7] Plain error review is not warranted because the error complained of does not pose one of those " 'truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integ-

---

[7] Practice Book § 4185 provides in relevant part: "The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interests of justice notice plain error not brought to the attention of the trial court."

rity of and public confidence in the judicial proceedings.' *State* v. *Hinckley,* 198 Conn. 77, 87–88, 502 A.2d 388 (1985); *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 181 Conn. 607, 609, 436 A.2d 1259, cert. denied, 449 U.S. 956, 101 S. Ct. 363, 66 L. Ed. 2d 221 (1980)." *Smith* v. *Czescel,* 12 Conn. App. 558, 563, 533 A.2d 223, cert. denied, 206 Conn. 803, 535 A.2d 131 (1987).

The final claim advanced by the plaintiffs is that the trial court erred in rendering judgment in accordance with the verdict, because the verdict was against the weight of the evidence. We do not agree.

The plaintiffs, in their brief, list with particularity those elements of the testimony they believe the jury should have accepted. Our review of the record and transcripts, however, indicates that the jury had more than sufficient evidence on which to base its verdict and to apportion damages as it did.

"As we have noted before, '[t]here are serious constitutional issues posed by setting aside a jury verdict. This is so because " '[l]itigants have a constitutional right to have issues of fact decided by the jury.' *Bambus* v. *Bridgeport Gas Co.,* 148 Conn. 167, 169, 169 A.2d 265 (1961)." ' *Zarrelli* v. *Barnum Festival Society, Inc.,* 6 Conn. App. 322, 326, 505 A.2d 25, cert. denied, 200 Conn. 801, 509 A.2d 516 (1986). Accordingly, a court should be hesitant to set aside a jury's verdict and must only do so when the jury verdict 'so shock[s] the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption.' *Shea* v. *Paczowski,* 11 Conn. App. 232, 233, 526 A.2d 558 (1987). 'A court should be especially hesitant to set aside a jury's award of damages.' *Zarrelli* v. *Barnum Festival Society, Inc.,* supra. ' "The assessment of damages 'defies any precise mathematical computation'; *Floyd* v. *Fruit Industries, Inc.,* 144 Conn. 659,

675, 136 A.2d 918 (1957); and, therefore, establishing damages . . . is a task peculiarly within the expertise of a jury." ' *Zarrelli* v. *Barnum Festival Society, Inc.,* supra." *Creem* v. *Cicero,* 12 Conn. App. 607, 609–10, 533 A.2d 234 (1987).

In the case before us, the trial court found nothing in the evidence that indicated it should disturb the jury's verdict.[8] Neither do we. The evidence does not compel us to conclude that "the jury's award did not fall somewhere within the necessarily uncertain limits of just damages, or that it shocked the sense of justice. See *Zarrelli* v. *Barnum Festival Society, Inc.,* supra. 'Furthermore, a parsimonious jury award is not inadequate as a matter of law.' *Shea* v. *Paczowski,* [supra, 235]." *Biagioni* v. *Aetna Life & Casualty Ins. Co.,* 16 Conn. App. 690, 693, 549 A.2d 279 (1988).

There is no error.

In this opinion the other judges concurred.

---

[8] After the jury returned a verdict for Alfred Trumpold, awarding him $1650.12 but reducing it by 10 percent for his own negligence, the court requested that the jury reconsider its verdict in light of the fact that the award differed from the amount of medical bills admitted into evidence. The jury then asked the court: "Are we required, being the jury, to award 90 percent of the requested amount by the plaintiff? Or are we allowed to accept only those [medical] bills submitted which we feel are applicable to the accident?" The court responded: "You are allowed to accept only those bills submitted which you feel are applicable to the accident."