[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR REMITTITUR (#158)
 I. BACKGROUND
On October 30, 2001, after a ten day trial, the jury rendered a verdict in favor of the plaintiff, Bonnie Opielowski-Brouwer (Brouwer) and against the defendant Haddam Hills Academy (Haddam). This matter comes before the court concerning a motion by Haddam for remittitur, dated November 8, 2001 (#158). On November 28, 2001, Brouwer filed her opposition to Haddam's motion (#159). The court heard oral argument in connection with the motion on December 11, 2001. The motion submitted by Haddam contends that the portion of the jury's verdict in which it awarded Brouwer $260,000.00 in non-economic damages, as a result the jury's finding that Haddam is liable for negligent misrepresentation, is excessive. The court now issues this memorandum of decision, and, for the reasons stated below, denies the motion.
 II. DISCUSSION A. Standard of Review on Motion for Remittitur
In the motion for remittitur, the defendant contends that the verdict rendered by the jury concerning non-economic damages was excessive. In considering such motions, the court may not simply substitute its view of CT Page 399 the evidence for that of the jury. The "right to have factual issues resolved by the jury. . . . embraces the determination of damages when there is room for a reasonable difference of opinion among fair-minded persons as to the amount that should be awarded. . . . The amount of a damage award is a matter peculiarly within the province of the trier of fact, in this case, the jury. . . . The size of the verdict alone does not determine whether it is excessive." (Internal quotation marks and citations omitted.) Ham v. Greene, 248 Conn. 508, 536, 729 A.2d 740, cert. denied, 528 U.S. 929, 120 S.Ct. 326, 145 L.Ed.2d 254 (1999). "A conclusion that the jury exercised merely poor judgment is likewise insufficient. . . . The ultimate test which must be applied to the verdict by the trial court is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption." (Citations omitted; internal quotation marks omitted.) Wichers v. Hatch, 252 Conn. 174, 187, 745 A.2d 789 (2000).
"When ruling on [a] motion for a remittitur, the trial court [is] required to view the evidence in the light most favorable to sustaining the jury's verdict." Berry v. Loiseau, 223 Conn. 786, 810, 614 A.2d 414
(1992). "When damages are claimed they are an essential element of the plaintiffs proof and must be proved with reasonable certainty. . . . Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty." (Internal quotation marks and citations omitted.) Gaudio v.Griffin Health Services Corp., 249 Conn. 523, 554, 733 A.2d 197 (1999).
 B. Emotional Distress
"Connecticut courts have remitted emotional distress awards where there was no proof of permanent injury and the damages award was disproportionate to the loss sustained; see Buckman v. People Express,Inc., 205 Conn. 166, 175, 530 A.2d 596 (1987) (remitting $50,000 to $15,000 where plaintiff failed to present proof of permanent injury); where the plaintiff was substantially compensated under other counts, and only sought counseling for six sessions to treat her emotional distress, see Craine v. Trinity College, No. CV 950555013S, 1999 WL 1315017
(Conn.Super., Dec. 27, 1999[, Peck, J.) (remitting $2 million gender discrimination award to $50,000); and in a failure to hire case, where there was no evidence of physical or psychological injury, and the plaintiff had found a new job which he enjoyed. Ragin v. Laidlaw[Transit, Inc.], Docket No. 97cv0024, 1999 WL 977603, *5 (D.Conn., Oct. 4, 1999) (remitting jury verdict of $250,000 in FEPA case to $150,000 as "absolute maximum' that could be awarded in case). In contrast, the Connecticut Supreme Court affirmed an emotional distress award of $50,000 CT Page 400 in Berry [v. Loiseau, supra] where the plaintiff supported his claim with testimony from a psychiatrist that he suffered from post-traumatic stress disorder as a result of being physically assaulted by his supervisor.223 Conn. at 810, 614 A.2d 414. Further, in Oakes[1] the state Supreme Court affirmed the jury's $97,000 emotional distress award, where the plaintiffs doctor diagnosed him as suffering from depression and prescribed Valium, where plaintiff described a recurrent stomach ailment requiring stomach medication because of his stress, and where plaintiff had engaged in a "futile four year search for employment' that led to further feelings of humiliation and rejection. 219 Conn. at 13,591 A.2d 1261." Schanzer v. United Technologies Corp., 120 F. Sup.2d 200,217 (D.Conn. 2000).
In addition, in Gaudio v. Griffin Health Services Corp., supra, in the absence of evidence of medical treatment or expert testimony, the jury's award of $100,000 in noneconomic damages based on a defamation claim was found not to be excessive. There, the court found that "the jury reasonably could have concluded that the plaintiff was emotionally devastated in the wake of the defendant's defamation. As a result of his depression, a romantic relationship terminated, and the plaintiff lost a substantial amount of weight." Id., 249 Conn. 552.
Haddam argues that the verdict is excessive, since "[p]laintiff did not introduce any evidence regarding the duration, severity or consequences of the emotional harm suffered. She claimed that she was saddened and embarrassed by her termination, but she did not introduce any additional evidence as to the duration or severity of her suffering. Moreover, the Plaintiff was terminated after only thirteen business days and promptly began searching for a new job. She found new employment within a matter of months and testified that she was very happy with her new job. Therefore, the duration and magnitude of her suffering were temporary, at best." (Defendant's motion for remittitur, p. 6.)
In response, Brouwer contends that the jury reasonably could have found that she suffered long term, serious emotional harm as a result of the false representations of Haddam which caused her to leave her previous position with the Town of Canterbury Board of Education in order to accept the position of education director at Haddam. The harm she suffered, she argues, manifested itself in self-doubt, embarrassment, lack of self-confidence, and continuing difficulty in trusting others. In particular, she points to her testimony concerning her fear for her own safety, and her concern about how far Haddam's "reach" extended. (See Brouwer's opposition to defendant's motion for remittitur, p. 3.)
Clearly, each case must be evaluated based on its own facts. Viewing the evidence in the light most favorable to sustaining the verdict, as CT Page 401 the court is required to do, the court finds that the jury reasonably could have found the following. In the spring of 1998, Brouwer was employed as director of special education with the Town of Canterbury public schools. In April, 1998, she met personnel from Haddam, to discuss leaving her then-current position and becoming employed by Haddam, a private special education facility, located in East Haddam, Connecticut, as its education director, a position equivalent to that of a school principal. In the course of the interview process, Brouwer was advised that she would have the opportunity for advancement with Haddam's affiliate, the Lake Grove Experience, which operates several schools.
Brouwer accepted Haddam's offer of employment, tendered her resignation to Canterbury, and began working for Haddam on June 17, 1998. During the brief period in which she worked for Haddam, she had meetings with its then-executive director, during which he acted in a physically confrontational manner towards her, including leaning over his desk, close to her face, becoming highly agitated, and screaming at her. These events concerned Brouwer's writing information into the school's records, and homework assignments. For example, in Brouwer's description, "he came across the desk at me holding this piece of paper in his hand." (See transcript of proceedings, October 17, 2001, p. 22; hereafter, "Tr., October 17, 2001, p. _____.") She termed his posture as "threatening." (Tr., October 17, 2001, p. 50.)
On July 3, 1998, Brouwer was called to see the executive director in his office, in the presence of another Haddam employee. The executive director told her that he did not trust her and that she could either resign or be fired.
Thereafter, Brouwer retained counsel, submitted her resignation, and began to look for other employment. She also communicated her concerns about how Haddam was being operated to State of Connecticut governmental officials. She was not successful in obtaining new employment, until February, 1999, when she became assistant director of special education with the Town of Killingly Board of Education. In the interim, although she actively sought a new position, she had no other job offers.
The jury also reasonably could have concluded that the emotional distress claimed by Brouwer was significant. Brouwer testified concerning the emotional effects of the events upon her. During her search for another job, she questioned her own judgment in accepting the job at Haddam and she lost confidence in herself Most important, due to his threatening behavior while she was at Haddam, she became afraid of the executive director. She became fearful of how long his arm might reach. She characterized him as a person who "is retaliatory and very threatening. . . ." (See Tr., October 17, 2001, p. 93) When asked CT Page 402 whether her experience at Haddam affected her as a person and how she views herself, she testified that she knows that it has. (See Tr., October 17, 2001, p. 95.)
Our Supreme Court, in Berry v. Loiseau, supra, 223 Conn. 810, has stated that evidence of fear of reprisal is a factor which may support an award of damages based on emotional distress. The jury was entitled to find, based on Brouwer's description of the executive director's confrontational meetings with her, which was corroborated, in part, by the testimony of a coworker, Pat Linko, that Brouwer's fear of him was reasonable. "Whether an individual's fear is reasonable or unreasonable . . . is . . . an ultimate factual determination that juries are capable of reaching based on their own experience, without the aid of medical expertise." Barrett v. Danbury Hospital, 232 Conn. 242, 256, 654 A.2d 748
(1995). "[A] danger of future injury is a present fact and the jury [is] entitled to take into consideration the anxiety resulting therefrom." (Internal quotation marks omitted.) Goodmaster v. Houser, 225 Conn. 637,645, 625 A.2d 1366 (1993). "[I]n a tort action, a plaintiff who has established breach of duty that was a substantial factor in causing a present injury which has resulted in an increased risk of future harm is entitled to compensation to the extent that the future harm is likely to occur." (Footnote omitted.) Petriello v. Kalman, 215 Conn. 377, 397-398,576 A.2d 474 (1990). Based on the evidence presented to the jury, the court finds that Brouwer's anxiety about the future does not amount to "[a]nxiety about a completely fictitious or imagined consequence, having no reasonable basis. . . ." (Internal quotation marks omitted.) Id., 390. The jury was entitled to credit Brouwer's testimony about her emotional distress.
Haddam relies heavily on our Supreme Court's decision in Buckman v.People's Express, Inc., 205 Conn. 166, 530 A.2d 596 (1987) for its contention that the verdict is excessive. There, the plaintiffs employer terminated his employment, and denied him continued medical coverage, causing him to suffer emotional distress. A remittitur was ordered, based primarily on the fact that no proof of permanent injury was offered. SeeBerry v. Loiseau, supra, 223 Conn. 809. As the court explained in Berry, the remittitur was not ordered in reliance on the minimal amount of special damages incurred by the plaintiff in Buckman; "rather, . . . the award was entirely disproportionate to the loss sustained." (Internal quotation marks omitted.) Berry v. Loiseau, supra.[2]
Haddam argues that Brouwer presented no proof of permanent injury. The facts here contrast with those in Buckman. There, the duration of the period of time when the plaintiff was under the impression he had no medical coverage was approximately four months. Buckman v. People'sExpress, Inc., supra, 205 Conn. 167. Here, Brouwer lost her position at CT Page 403 Haddam in July, 1998 and did not get another position until more than six months later, in February, 1999, when she obtained the position she occupied at the time of trial, assistant director of special education in Killingly. In addition, the jury reasonably could have found that her anxiety concerning possible reprisal continued as well.
While there was no expert opinion offered as to whether her injury is of a permanent nature, the jury was entitled to find, based on the evidence, that a significant part of her emotional distress, her fear of retaliation, continued through the time of trial, a period of over three years since the date of her termination. Thus, there was evidence that the injury is of significantly greater duration than that which was at issue in Buckman. In addition, neither expert testimony nor incurred medical expenses are necessary to prove the existence of such an injury. See Oakes v. New England Dairies, Inc., supra, 219 Conn. 14-15.
Haddam also cites Ragin v. Laidlaw Transit, Inc., supra, in support of its position. After trial concerning the plaintiffs age discrimination claim, premised on failure to be re-hired, the court in Ragin ordered a remittitur from a compensatory damages award of $250,000 to $150,000 for pain and suffering based on emotional distress. There, as here, there was no evidence of the plaintiff having undergone medical treatment. The court noted also that, as with Brouwer here, the plaintiff liked his present job. See id. In contrast to the record here, the court noted that there was no evidence of "physical or psychological problems which could be attributed to the event." Id. "Indeed, the plaintiff was not even aware of what happened to his application for employment for a period of time." Id. Unlike the record here, there was no evidence that the plaintiff in Ragin was subjected, in person, to physical intimidation. The distress at issue there did not include fear concerning future retaliation. Notwithstanding these limitations in proof, the court inRagin did not deem excessive the substantial sum of $150,000 to compensate the plaintiff for his emotional distress.
Similar distinctions exist between the evidence here and that inSchanzer v. United Technologies Corp., supra, also cited by Haddam. In that age discrimination case, the court ordered a remittitur from $175,000 for each of two plaintiffs to $40,000 for one and $45,000 for the other. Id., 120 F. Sup.2d 219. The court stated that, "[t]here was no evidence of workplace mistreatment or humiliation. [The plaintiffs] were laid off, not terminated for individual performance deficiencies." Id. Obviously, here, there was evidence from which the jury reasonably could have concluded both that Brouwer was subjected to workplace mistreatment and humiliation, as well as that she was terminated for claimed individual performance deficiencies. CT Page 404
Also, the Schanzer court found that "the loss of the feeling of security and comfort of employment at Pratt described by each of these two men must be viewed in the context of their inevitable knowledge of Pratt's other downsizing and consolidation." Id. In contrast, here there was evidence that Brouwer gave up stable employment at Canterbury to go to Haddam; that Haddam was newly established by Lake Grove Experience; and that there was the possibility of advancement for Brouwer with that company.
Likewise, the court is unpersuaded that Craine v. Trinity College, supra, also cited by Haddam, supports its position. There, after being denied tenure, the plaintiff briefly sought psychological counseling. Her psychologist testified that she had a short-term psychological reaction to an event. See id. As noted above, there was evidence before the jury here that reasonably could have led it to conclude that Brouwer's emotional injury was of a continuing nature. Again, in Craine, in contrast to Brouwer's case, there was no evidence that the plaintiff was subjected to physical intimidation or suffered from fear of future harm at her employer's hands.
As noted, the Craine court ordered a remittitur of the emotional distress component of the award, from $2.5 million, to $50,000, in light of the $2.0 million which the jury also awarded to the plaintiff for noneconomic compensatory damages. See id. The jury's award to Brouwer of $260,000 in non-economic damages represents approximately 12.7% of the total award of $2,050,000 which was found not to be excessive in Craine.[3]
Finally, the court notes that it was the jury's province to assess Brouwer's testimony, including her demeanor on the witness stand. SeeTrzcinski v. Richey, 190 Conn. 285, 298, 460 A.2d 1269 (1983); Christiev. Eager, 129 Conn. 62, 64, 26 A.2d 352 (1942). Brouwer's testimony afforded to the jury an opportunity for the jury to measure, contemporaneously, the effect of the events at Haddam on Brouwer. In reviewing the evidence post-verdict it is not this court's function to "sit as the seventh juror. . . ." (Internal quotation marks omitted.)Ormsby v. Frankel, 255 Conn. 670, 692, 768 A.2d 441 (2001).
 C. Closing Argument
Haddam also argues that Brouwer's counsel's closing argument improperly requested that the jury award damages which exceeded Brouwer's emotional distress, in essence seeking to have the jury punish Haddam for its treatment of the plaintiff. (See motion for remittitur, pp. 7-9.) For example, Haddam asserts that Brouwer's counsel argued that Brouwer's noneconomic damages should be equivalent in value to the annual rent paid CT Page 405 by Haddam to its lessor ($550,000.00). (See motion for remittitur, p. 8.)
No objection to this portion of Brouwer's counsel's closing argument was made at the time of trial, either when the remarks were made or after the closing was completed. "The failure to object to the remarks at the time they were made or at the close of argument constitutes a waiver of the . . . right to press this claim of error." Trumpold v. Besch,19 Conn. App. 22, 30, 561 A.2d 438, cert. denied, 212 Conn. 812,565 A.2d 538 (1989), cert. denied, 494 U.S. 1029, 110 S.Ct. 1476,108 L.Ed.2d 613 (1990). See also, Wood v. Bridgeport, 216 Conn. 604, 609,583 A.2d 124 (1990). Under the circumstances, the court deems this objection to Brouwer's counsel's closing argument to the jury to have been waived.
In addition, the court notes the following concerning this argument. It would be inappropriate to speculate as to the jury's method for arriving at the specific amount awarded. "The quest for truth is ill served when the court is asked to engage in speculation." State v. Barkal,8 Conn. App. 313, 317, 512 A.2d 972, cert. denied, 201 Conn. 812,517 A.2d 630 (1986).
Finally, in the court's instructions, the jury was advised that it could not award damages based on sympathy, speculation, conjecture, or guesswork. In addition, the court instructed the jury that damages could not be awarded to punish Haddam. The jury was also instructed that counsel's suggestions made in closing argument were only his opinion and not evidence, that it was not bound to accept anything that counsel argued about damages, and that it was free to disregard any suggested approach in whole or in part. From the amount awarded, it appears that the jury did not adopt the measure of damages suggested by Brouwer in her counsel's closing argument.
 CONCLUSION
The jury's verdict was for $57,714.00 in economic damages and $260,000.00 in noneconomic damages.[4] There was a sufficient evidentiary basis on which the jury could premise these monetary awards. While it was substantial, the jury's verdict as to noneconomic damages is not excessive and does not shock the court's sense of justice. There is no evidence that the jury's verdict was based on partiality, prejudice, mistake or corruption.
For the foregoing reasons, the defendant's motion for remittitur is deified. Judgment may enter for Brouwer and against Haddam in the total amount of $323,485.00, representing the sum of the jury's awards of $57,714.00 for economic damages and $260,000.00 for noneconomic damages, CT Page 406 and adding $5,771.00 for interest, as stipulated. It is so ordered.
BY THE COURT
 ROBERT B. SHAPIRO JUDGE OF THE SUPERIOR COURT