******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* RYAN C. WRIGHT
(AC 33894)

DiPentima, C. J., and Keller and Borden, Js.

*Argued December 4, 2013—officially released April 29, 2014*

(Appeal from Superior Court, judicial district of New London, Schimelman, J.)

*Lauren Weisfeld*, senior assistant public defender, for the appellant (defendant).

*Paul J. Narducci*, senior assistant state's attorney, with whom, on the brief, was *Michael L. Regan*, state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, Ryan C. Wright, appeals from the judgment of conviction, rendered after a jury trial, of conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a. On appeal, the defendant claims that the trial court (1) improperly precluded him from presenting evidence of third party culpability by using the incorrect standard and erroneously finding that the evidence was not relevant, and (2) improperly declined to charge the jury on the quality of the police investigation. We affirm the judgment of the court.

The jury reasonably could have found the following facts. On December 9, 2008, at approximately 11:15 p.m., several guests at a hotel in Groton reported to the front desk clerk, Robert Harvey, that they heard several gunshots. Harvey noted these calls in the front desk logbook and then walked around the perimeter of the hotel. He did not see anything suspicious, but noticed a white car leaving the hotel parking lot.

The following morning, a member of the housekeeping staff alerted Harvey that there appeared to be a person lying in the doorway of room 130. Harvey went to room 130 to investigate and observed a man lying face down in the doorway. After nudging the body several times and receiving no response, he noticed bullet shell casings on the floor and called the police.

Upon arriving at the scene, police recovered two spent .40 caliber Smith & Wesson shell casings from the hallway just outside of room 130 and four additional spent shell casings from inside the room. The victim was identified as Jamel Campbell and the autopsy report indicated that he had suffered two gunshot wounds to the chest and abdomen, a gunshot wound to the neck, and several gunshot wounds to the head. Ballistic evidence indicated that the same gun fired all six bullets and discharged all six bullet shell casings.

Near the victim was a set of car keys. The police located the car associated with the keys in the hotel parking lot, and determined that the car was registered to Emily Strother, the victim's girlfriend and mother of his child. After speaking with Strother and several of the victim's friends, the police learned that the victim might have made plans to meet with Meagan Foley at the hotel the night of his death.

When police first spoke with Foley, she informed them that she had communicated with the victim only a few times on December 9, 2008, via text messaging. The victim's phone records, however, indicated more than fifty communications between the victim and Foley on the day in question, including both text messages and telephone calls. When confronted with this information during a second interview, Foley told the police that there was a "blood feud" between the victim

and the defendant. Upon receiving this information, the police interviewed the defendant, and during the interview, the defendant denied any involvement in the victim's death and provided the police with two telephone numbers where the police could reach him. The police then sought, obtained, and executed a search warrant for the defendant's residence. The search, however, did not yield any relevant evidence or information.

In addition to searching the defendant's home, the police obtained search warrants for the cell phone records of Foley, the victim and the defendant. When police analyzed the text messaging records of the victim and the defendant for the twenty-four hours preceding the victim's death, the records revealed that the defendant and Foley had planned for Foley to lure the victim to the hotel so that the defendant could kill him.[1]

Foley testified at trial that she had been friends with both the defendant and the victim for approximately ten years before the victim's death and that she had corresponded regularly with both of them. She testified that the victim had become angry with the defendant in November, 2008, when he had learned that the defendant had had sexual relations with Strother while the victim was incarcerated in 2007. She further testified that the victim had told her that he and a friend, Pablo Colon, had met the defendant at a gas station in the defendant's neighborhood and had stolen the defendant's car, had removed the stereo equipment and rims, and had left the car in Hartford.[2]

Foley testified that the defendant also spoke to her about the altercation he had with the victim at the gas station and that the defendant became increasingly angry every time he discussed the event with her. At one point, the defendant told Foley that, on multiple occasions, he had waited outside her home when he thought the victim was visiting in order to kill him when he exited the house. Afraid that the defendant would kill the victim at her home and that her family might be harmed, Foley testified that she suggested to the defendant that he kill the victim at a hotel and that she helped the defendant plan the murder, and lure the victim to the hotel room.

Foley testified that she and the defendant had agreed that Foley would lure the victim to the hotel and that the defendant had given Foley money to rent the room. Foley stated that she had text messaged the victim and had made plans to meet the victim at the hotel that evening. Foley told the victim that she had lost her identification and would not be able to reserve the hotel room, but that she would give him the money for the room if he reserved it.[3] The victim drove to Foley's residence the evening of his death and picked up the money for the room. Foley testified that she called the victim and he told her that he had reserved room 130 at the hotel. Foley then testified that she called the

defendant after speaking with the victim and told the defendant that the victim was staying in room 130.

Foley further testified that at one point, the victim text messaged her and said he was going to leave the hotel. Foley relayed this information to the defendant, and then convinced the victim to stay by telling him that she was almost at the hotel. Very shortly thereafter, Foley received a text message from the defendant saying, "Done." Foley received no more communications from the victim.

The defendant was arrested and charged by substitute information with murder in violation of § 53a-54a (a) and conspiracy to commit murder in violation of §§ 53a-48 and 53a-54a (a). The jury found the defendant guilty of conspiracy to commit murder, but was unable to come to a unanimous decision on the murder charge. The court rendered judgment in accordance with the jury's verdict of guilty on the conspiracy to commit murder charge, and declared a mistrial as to the murder charge. On August 8, 2011, the defendant was sentenced to twenty years incarceration for conspiracy to commit murder. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant claims that the court erred by improperly precluding him from presenting evidence of third party culpability. He argues that the court (1) used the improper standard to determine whether the evidence of third party culpability should have been admitted, and (2) erroneously found that the evidence was not relevant. We do not agree.

The following additional facts are necessary for our resolution of this claim. The state filed a motion in limine requesting that the court preclude evidence concerning third party culpability unless the defendant showed some evidence that directly connected a third party to the crimes with which the defendant was charged. The motion further requested that the court require the defendant to make an offer of proof prior to introducing evidence of alleged third party culpability so that the court could determine its admissibility outside of the presence of the jury. The court granted the state's motion.

The defendant sought to offer evidence of third party culpability through the testimony of Valerie Reinhart, who had been a friend of the victim for several years. During the defendant's offer of proof, Reinhart was questioned outside of the presence of the jury. She testified that she had known the victim for three years and that approximately one-half hour before the victim's murder, he had told her that someone was threatening him because he had "burnt somebody for Ecstasy pills" and had "messed with the wrong person." Reinhart further testified that the victim did not provide

the name of the person who threatened him, did not describe the person involved, did not specifically indicate when the threats occurred, and did not describe the nature of the threats.

The court found that, although the defendant had a constitutional right to present a defense, he did not have a right to present evidence that was not relevant. The court further found that Reinhart's testimony was "so nebulous and certainly not so direct in the court's mind that it would be relevant and serve any purpose with respect to a claim of third party culpability or that it was not the defendant who committed these particular crimes. Even if the jury were to hear that type of testimony, in my mind, that still does not absolve, so to speak, or even potentially absolve [the defendant] from being found to be the perpetrator of the alleged crimes that he's charged with here. So while [the defendant] certainly has the right to present a defense, he has presented witnesses with respect to his defense of not being the perpetrator, the court does not believe that the evidence that this witness would give rises to a level that it becomes relevant and/or introductory for the purpose for which it is sought to be admitted." Accordingly, the court granted the state's motion in limine and sustained the state's objection to the evidence.

A

On appeal, the defendant argues that the court used the wrong standard to determine whether the evidence should have been admitted. The defendant's claim has no merit.

"[W]hether the court applied the correct legal standard is a question of law subject to plenary review." (Internal quotation marks omitted.) *Carraway* v. *Commissioner of Correction*, 144 Conn. App. 461, 471, 72 A.3d 426 (2013). "The federal constitution require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense. *California* v. *Trombetta*, 467 U.S. 479, 485, 104 S. Ct. 2528, 81 L. Ed. 2d 413 (1984). The sixth amendment right to compulsory process includes the right to offer the testimony of witnesses, and to compel their attendance, if necessary, [and] is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so that it may decide where the truth lies. . . . *State* v. *Genotti*, 220 Conn. 796, 803–804, 601 A.2d 1013 (1992), quoting *Washington* v. *Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967). . . . The defendant's sixth amendment right, however, does not require the trial court to forgo completely restraints on the admissibility of evidence. . . . Generally, an accused must comply with established rules of procedure and evidence in exercising his right to present a defense. . . . A defendant, therefore, may introduce only relevant

evidence, and, if the proffered evidence is not relevant, its exclusion is proper and the defendant's right is not violated." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Cerreta*, 260 Conn. 251, 260–61, 796 A.2d 1176 (2002).

"We have recognized consistently that a defendant has a right to introduce evidence that indicates that someone other than the defendant committed the crime with which the defendant has been charged. *State* v. *Sauris*, 227 Conn. 389, 401, 631 A.2d 238 (1993); *State* v. *Hernandez*, [224 Conn. 196, 202, 618 A.2d 494 (1992)]; *State* v. *Echols*, [203 Conn. 385, 392, 524 A.2d 1143 (1987)]. The defendant must, however, present evidence that directly connects a third party to the crime . . . . *State* v. *Hernandez*, supra, 202. It is not enough to show that another had the motive to commit the crime . . . nor is it enough to raise a bare suspicion that some other person may have committed the crime of which the defendant is accused. . . . *State* v. *Echols*, supra, 392." (Internal quotation marks omitted.) *State* v. *Ceretta*, supra, 260 Conn. 262–63.

The defendant argues that the court excluded the evidence based on its conclusion that Reinhart's testimony would not absolve the defendant, which, the defendant argues, contravenes the applicable standard that the court must admit evidence of third party culpability if the evidence directly connects a third party to the crime alleged. See *State* v. *Hernandez*, supra, 224 Conn. 202; *State* v. *Echols*, supra, 203 Conn. 392. In viewing the court's oral decision on the state's motion in limine as a whole, however, although the court did find that it believed that Reinhart's testimony would not absolve the defendant of the alleged crime, it is quite evident from the court's other findings that the court used the appropriate standard in making its determination to exclude the evidence.

Before making its decision, the court stated that the relevant case law on admitting third party culpability evidence required a court to admit such evidence if, considering the evidence in the light most favorable to the defendant, the defendant establishes a "direct connection" between the alleged third party and the charged offense. The court then went on to find that Reinhart's "testimony based upon the offer of proof [was] so nebulous and certainly not so direct in the court's mind that it would be relevant and serve any purpose with respect to a claim of third party culpability or that it was not the defendant who committed these particular crimes." It is evident from this finding that the court considered whether the defendant established a direct connection between the alleged third party and the crime with which the defendant was charged. Accordingly, we conclude that the court used the appropriate standard when deciding whether the evidence of alleged third party culpability should have been

admitted.

B

The defendant also claims that the court erroneously found that the defendant's offered evidence of alleged third party culpability was not relevant. We do not agree.

"The admissibility of evidence of third party culpability is governed by the rules relating to relevancy." *State* v. *Boles*, 223 Conn. 535, 549, 613 A.2d 770 (1992). "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . *State* v. *Prioleau*, 235 Conn. 274, 305, 664 A.2d 743 (1995). Evidence is relevant if it tends to make the existence or nonexistence of any other fact more probable or less probable than it would be without such evidence. . . . To be relevant, the evidence need not exclude all other possibilities; it is sufficient if it tends to support the conclusion [for which it is offered], even to a slight degree. *State* v. *Rinaldi*, 220 Conn. 345, 353, 599 A.2d 1 (1991)." (Citation omitted; internal quotation marks omitted.) *State* v. *Ceretta*, supra, 260 Conn. 261–62. "Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worthy or safe to be admitted in the proof of the latter." (Internal quotation marks omitted.) *State* v. *Saunders*, 267 Conn. 363, 383, 838 A.2d 186, cert. denied, 541 U.S. 1036, 124 S. Ct. 2113, 158 L. Ed. 2d 722 (2004). Finally, "[t]he trial court's ruling on the relevancy of third party inculpatory evidence will be reversed on appeal only if the court has abused its discretion or an injustice appears to have been done." (Internal quotation marks omitted.) *State* v. *Francis*, 267 Conn. 162, 174, 836 A.2d 1191 (2003).

The defendant contends that Reinhart's testimony was relevant, and, therefore, admissible because it established that someone other than the defendant had the motive and intent to harm the victim. Although the existence of the threats against the victim by a third party would tend to show that someone other than the defendant had the motive and intent to harm the victim, that showing alone is insufficient to render the evidence admissible. See *State* v. *Cerrata*, supra, 260 Conn. 263 ("[i]t is not enough to show that another had the motive to commit the crime . . . nor is it enough to raise a bare suspicion that some other person may have committed the crime of which the defendant is accused" [internal quotation marks omitted]).

At oral argument before this court, the defendant conceded that Reinhart's testimony was ambiguous as to when the victim actually received the alleged threatening text messages, but argued that evidence of a threat by a third party was very significant as to the relevancy of the evidence, and should have been given

more weight by the court when it made its decision. The defendant did not provide any authority and we are unable to find any that would support this argument. Further, Reinhart was unable to identify the alleged third party, provide a description of the alleged third party or describe the nature of the alleged threats. In light of the record before us, we conclude that it was reasonable for the court to find that the defendant failed to establish a direct connection between the alleged third party and the crimes with which the defendant was charged, as the testimony provided by Reinhart would merely create a bare suspicion that some other person may have murdered the victim. The court did not abuse its discretion in excluding Reinhart's testimony.

## II

The defendant also claims that the court improperly declined to charge the jury on the quality of the police investigation. He argues that he elicited sufficient evidence at trial to call into question the adequacy of the police investigation, and that questioning deficiencies in the police investigation to raise reasonable doubt is a recognized legal defense. Accordingly, the defendant argues that, as a matter of law, he was entitled to a jury charge as to his theory of defense. We do not agree.

The following additional facts are necessary for our resolution of this claim. The defendant's theory of defense advanced at trial was that a third party killed the victim and that the police failed to identify this third party because they prematurely focused on the defendant as the culprit. Through the cross-examination of Officers Donald Rankin and Robert Emery, and Detective Keith Hoyt, the defense attempted to highlight alleged deficiencies in the police investigation. Specifically, the defense attempted to show that the police had secured the phone records of the defendant, the victim and Foley for only the twenty-four hours prior to the victim's death, thereby failing to obtain all of the necessary phone records to ensure that a third party was not involved.

In closing argument, the defense argued that the police engaged in poor investigation practices and failed to obtain phone records that were necessary to ensure that a third party was not involved. Additionally, the defense argued that the police only investigated until they were "satisfied" that the defendant was guilty of the victim's murder, and, therefore, failed to collect all relevant evidence available for the jury to make an informed decision.

The defense requested that the court charge the jury with the following instruction: "Investigation which is thorough and conducted in good faith may be more credible while an investigation which is incomplete, negligent or in bad faith may be found to have lesser value or no value at all. In deciding the credibility of the

witnesses and the weight, if says to give the prosecution evidence, consider whether the investigation was negligent and/or conducted in bad faith." The court denied the defense's request to charge, citing *State* v. *Collins*, 299 Conn. 567, 599–600, 10 A.3d 1005 (2011). The court concluded that "whether the government conducted a thorough, professional investigation [was] not relevant to what the jury must decide."

During the jury charge, the trial court gave the following instruction to the jury regarding reasonable doubt: "Here, as in all criminal prosecutions, the defendant is entitled to be innocent until proven guilty beyond a reasonable doubt. . . . As far as you are concerned, he is innocent and he continues to be innocent unless and until such time as all of the evidence produced here in the orderly conduct of this case considered in light of these instructions of law and deliberated upon by you in the jury room satisfy you beyond a reasonable doubt that he is guilty. . . . The burden to prove the defendant guilty of any crime you're asked to deliberate upon is up to the state. The defendant does not have to prove his innocence. This means that the state must prove beyond a reasonable doubt each and every essential element necessary to constitute the alleged crime being considered by you. Whether the burden of proof resting upon the state is sustained depends not on the number of witnesses nor on the quantity of the testimony but on the nature and quality of the testimony. . . . A reasonable doubt is an honest and reasonable uncertainty in your mind about the guilt of the defendant after you have given full and impartial consideration to all of the evidence. A reasonable doubt may arise from the evidence itself or from lack of evidence. . . ."

The defendant argues on appeal that through the cross-examination of the state's witnesses, he produced sufficient evidence from which the jury could believe that the police investigation was not thorough, and that reasonable doubt, a recognized legal defense, could arise from a jury's finding that law enforcement failed to investigate adequately the crime. Further, the defendant argues that because this is a recognized legal defense, the court was obligated as a matter of law to instruct the jury as to the defendant's theory of defense, and that the court's failure to do so impinged upon the defendant's constitutional right to due process.

A proper instruction on a recognized legal defense is of constitutional magnitude. See e.g. *State* v. *Amado*, 254 Conn. 184, 194, 756 A.2d 274 (2000). "Our standard of review in cases in which the defendant claims that the instructions were constitutionally deficient is whether it is reasonably possible that the instructions misled the jury. . . . In assessing the claim, the jury charge must be read as a whole, not in artificial isolation from the overall charge. . . . The principal function of a jury

charge is to assist the jury in applying the law correctly to the facts which they might find to be established . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Wall*, 40 Conn. App. 643, 667, 673 A.2d 530, cert. denied, 237 Conn. 924, 677 A.2d 950 (1996).

The defendant's argument rests upon the principle that using evidence of an inadequate police investigation to create reasonable doubt is a recognized legal defense. The defendant's argument is flawed in that the concept of reasonable doubt is not a recognized defense to a crime; see General Statutes § 53a-12 et seq.; but a standard by which the state must prove its case. See *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). "The [reasonable doubt concept] provides concrete substance for the presumption of innocence—that bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law. . . . [Id.], 363. At the same time, by impressing upon the [fact finder] the need to reach a subjective state of near certitude of the guilt of the accused, the [reasonable doubt] standard symbolizes the significance that our society attaches to the criminal sanction and thus to liberty itself. *Jackson* v. *Virginia*, [443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)]. [Nonetheless] [t]he [defendant] in a criminal case [is] entitled to a clear and unequivocal charge by the court that the guilt of the [defendant] must be proved beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *LaSalle*, 95 Conn. App. 263, 278, 897 A.2d 101, cert. denied, 279 Conn. 908, 901 A.2d 1227 (2006).

The defendant does not challenge any segment of the court's charge on reasonable doubt. He argues that the court erred by not including a charge instructing the jury that it was permitted to consider the quality of the police investigation in determining whether the state proved its case beyond a reasonable doubt. The defendant, however, fails to provide support for his argument that such a charge was required by the court.

The defendant relies on *States* v. *Collins*, supra, 299 Conn. 599–600, which held that "[a] defendant may . . . rely upon relevant deficiencies or lapses in the police investigation to raise the specter of reasonable doubt, and that the trial court violates his right to a fair trial by precluding the jury from considering evidence to that effect." *Collins* does not require a court to instruct the jury on the quality of police investigation, but merely holds that a court may not preclude such evidence and argument from being presented to the jury for its consideration, and the defendant in this case provides no other support for his argument.

In the present case, the defendant was allowed to elicit testimony from witnesses to suggest that there were deficiencies in the police investigation and was allowed to argue this theory in closing argument. Addi-

tionally, in its charge to the jury on reasonable doubt, the court instructed the jury that "[a] reasonable doubt may arise from the evidence itself or from lack of evidence." We conclude that the defendant's right to a fair trial was not impinged because he was given the opportunity to present evidence and argument regarding deficiencies in the police investigation to the jury. Accordingly, we conclude that the jury was not misled by the instructions given, and, therefore, there was no error.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The police were not able to analyze Foley's text messages as her cell phone provider, T-Mobile, does not retain the messages of its customers.

[2] The defendant reported his car, a Mercedes Benz, stolen to both the police and his insurance company. During the investigation of the victim's murder, police found stereo equipment in the basement of the home the victim shared with Strother. The defendant later identified the stereo equipment and told the police that it had been in the car that had been stolen from him.

[3] Foley admitted at trial that this was a lie as she knew where her identification was when she told the victim that it was lost. She testified that she lied to the victim because the defendant had told her not to put the reservation in her name so that the police would not be able to trace the room back to her.