******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* DEVONTE WEST
(AC 37676)

Lavine, Beach and Bishop, Js.

*Argued May 11—officially released August 2, 2016*

(Appeal from Superior Court, judicial district of New London, geographical area number ten, Newson, J.)

*Daniel J. Krisch*, assigned counsel, for the appellant (defendant).

*Laurie N. Feldman*, special deputy assistant state's attorney, with whom, on the brief, were *Michael L. Regan*, state's attorney, and *Rafael I. Bustamante*, assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Devonte West, appeals from the judgment of conviction, rendered after a jury trial, on one count of assault on a public safety officer in violation of General Statutes § 53a-167c (a) (5), one count of interfering with an officer in violation of General Statutes § 53a-167a, and one count of breach of the peace in the second degree in violation of General Statutes § 53a-181 (a) (1). On appeal, the defendant claims that the trial court erred when it (1) failed to charge the jury on the quality of the police investigation, and (2) implied at sentencing that it was penalizing the defendant for asserting his constitutional right to stand trial. We disagree and, therefore, affirm the judgment of the court.

The jury reasonably could have found the following facts. On June 16, 2013, at approximately 10:30 p.m., John Michaud, an officer of the New London Police Department (department), responded to a harassment call that did not implicate the defendant. The complainant claimed that her father, Kenneth Hack, who lived at 57 Jay Street, sent her harassing text messages and phone calls. Michaud requested police assistance and went to 57 Jay Street, a third floor residence in a duplex. The front door opened into a vestibule that separated the front door from a locked interior door.

In response to Michaud's request, Deena Knott, Jeremy Zelinski, and Brian Griffin, all officers of the department, arrived at the scene. All four officers were wearing their police issued uniforms. Michaud and Knott opened the front door but could not open the interior door. Through the window of the interior door, Michaud could see the defendant. Michaud knocked on the window, but before he could announce why he was there, the defendant profanely stated that he was not going to let the officers inside the building because they did not have a warrant. One of the officers stated that they were not there for the defendant, but the defendant refused to open the interior door and walked away. When the officer again told the defendant that they were not there to speak with him, the defendant again yelled obscenities at the officers and told them to leave.

Hack soon left the apartment, was arrested, and was placed in a police cruiser. At this point, Robert Pickett, a detective sergeant in the department, arrived. While Hack was being arrested, the defendant stood on the front step of the residence, continuing to yell obscenities at the officers. As the police officers prepared to leave, a minivan sped onto Jay Street and stopped in the middle of the road alongside the police cruisers. The defendant's mother, Henrietta Adger, exited the front passenger seat and ran to the cruiser Hack was sitting in, asking why the police had arrested her son. She realized that the defendant was not in the cruiser,

but she told the officers that they had no business being on her property. When Michaud began to issue the operator of the van a motor vehicle violation, Adger became irate and yelled obscenities at the officers. Pickett and Griffin struggled with Adger to take her into custody.

While Adger was being arrested, the defendant continued to yell and scream obscenities from the front steps. At one point, he went down the stairs while shouting at the officers. Michaud and Zelinski, who thought that the defendant was going to interfere with the arrest, approached him. The defendant retreated up the stairs. Michaud stood at the bottom of the stairs, while the defendant shouted at Michaud to stop beating his mother. The defendant also entreated Michaud to shoot him. At one point, Michaud thought that the defendant was going to charge down the stairs toward him.

Knott came over next to Michaud and told the defendant to go back into the apartment. The defendant came halfway down the stairs and spat on or toward Knott.[1] The defendant then ran up the stairs into the vestibule and shut the front door behind him. One of the officers kicked in the front door. When the officers attempted to arrest him, the defendant fought back by flailing his arms and kicking his legs. The officers struggled to arrest the defendant. When they were on the front lawn, the defendant failed to respond to a Taser warning. Pickett then tasered the defendant. The officers eventually were able to subdue the defendant and take him into custody. He was charged with two counts of assaulting a public safety officer, one count of interfering with an officer, and one count of breach of the peace in the second degree.

At trial, the state presented its evidence through four of the five officers who were present at the scene. On cross-examination, defense counsel highlighted numerous alleged deficiencies in the police investigation. The defendant called five witnesses, including an expert witness, Bryce Linskey, who testified that the police investigation of the defendant's arrest was not consistent with good police practice. Linskey also testified that it was possible that the defendant had no intent to kick and flail, but did so because he was tasered. In addition, the defendant testified that he had had prior negative experiences with the police.[2] He, however, admitted that he spat at Knott.

The jury found the defendant guilty of three of the four charges, acquitting him of one count of assaulting a public safety officer. On December 5, 2014, the court sentenced the defendant to three years incarceration, execution suspended after nine months, and two years of probation. This appeal followed. Additional facts and procedural history will be set forth as necessary to address the defendant's claims.

# I

The defendant first claims that the court improperly declined to charge the jury on the quality of the police investigation. The defendant argues that he presented evidence calling the adequacy of the police investigation into question in an effort to create reasonable doubt as to his guilt. The defendant argues that, as a matter of law, he was entitled to a jury charge regarding the adequacy of the police investigation. We disagree.

The following additional facts are relevant to this claim. The defendant submitted a request to charge pertaining to the adequacy of the police investigation, but the court denied defense counsel's request.[3] The court stated that, even though defense counsel had focused on the alleged inadequacy of the police investigation throughout the trial, it did not have a duty to charge the jury on whether an inadequate police investigation could give rise to reasonable doubt. It noted that this was particularly true because none of the state's witnesses were police informants or alleged accomplices. The court instructed the jury on witness credibility, which included an instruction on how to assess police officer testimony. It also instructed the jury that it was the state's burden to prove the defendant's guilt beyond a reasonable doubt.[4]

The defendant argues on appeal that, through cross-examination of the state's witnesses and through direct examination of his own witnesses, he produced sufficient evidence from which the jury could find that the police investigation was not thorough. He argues that because the investigation was inadequate, it could give rise to reasonable doubt of his guilt and, therefore, despite the fact that reasonable doubt is not a legally recognized defense, the court was obligated, as a matter of law, to instruct the jury as to the defendant's theory of defense. The defendant asserts that the court's failure to do so infringed on his constitutional right to due process.

We set forth the applicable standard of review and the legal principles relevant to this claim. "Our standard of review in cases in which the defendant claims that the instructions were constitutionally deficient is whether it is reasonably possible that the instructions misled the jury. . . . In assessing the claim, the jury charge must be read as a whole, not in artificial isolation from the overall charge. . . . The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which they might find to be established . . . ." (Internal quotation marks omitted.) *State* v. *Wright*, 149 Conn. App. 758, 772, 89 A.3d 458, cert. denied, 312 Conn. 917, 94 A.3d 641 (2014). "[T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in

such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Cales*, 95 Conn. App. 533, 535–36, 897 A.2d 657 (2006).

The defendant's claim is controlled by *State* v. *Wright*, supra, 149 Conn. App. 770–74.[5] His claim fails because, as the court stated in *Wright*, it conflates "the concept of [beyond a] reasonable doubt" with a legal defense. Id., 772. "[T]he concept of reasonable doubt is *not a recognized defense to a crime* . . . but a standard by which the state must prove its case. . . . The [reasonable doubt concept] provides concrete substance for the presumption of innocence—that bedrock axiomatic and elementary principle whose enforcement lies at the foundation of the administration of our criminal law." (Citations omitted; emphasis added; internal quotation marks omitted.) Id., 772–73.

In the present case, the defendant relies on the same rationale as did the defendant in *Wright*, which this court rejected, stating: "The defendant does not challenge any segment of the court's charge on reasonable doubt. He argues that the court erred by not including a charge instructing the jury that it was permitted to consider the quality of the police investigation in determining whether the state proved its case beyond a reasonable doubt . . . [but] the defendant was allowed to elicit testimony from witnesses to suggest that there were deficiencies in the police investigation and was allowed to argue this theory in closing argument." (Citation omitted.) Id., 773–74. Additionally, as in *Wright*, the trial court in the present case properly instructed the jury that the state must prove the defendant's guilt beyond a reasonable doubt. Id., 774.

The defendant was not deprived the right to a fair trial because he was given the opportunity to present evidence and cross-examine the state's witnesses regarding the adequacy of the police investigation. See also id. We conclude that the jury was not misled by the instructions given, and the defendant was not entitled to a charge on the quality of the police investigation.

II

The defendant's next claim is that at sentencing, the trial court improperly implied that it was penalizing him for asserting his right to stand trial. We disagree.[6]

The following additional facts are relevant to this claim. During sentencing, the defendant interrupted the trial court and made a last minute request to represent himself. The trial court rejected his request because it was brought at "the eleventh hour," and there was nothing in the record "that would lead [the] court to believe that [defense counsel] [had] not engaged in [competent]

and effective representation." The court noted that "the fact that [the defendant] may not like the results [of the trial] is a different story." The trial court also noted that "the clerk approached [the trial court] and indicated [that the defendant] was rather insistent on filing an application for waiver and appeal paperwork and, notwithstanding the fact that they tried to tell him numerous times, there is nothing to appeal and . . . nothing you can file, sir, until after the sentence." Before the trial court could finish explaining why the defendant's appeal papers could not be filed at that time, the defendant interrupted the trial court, stating, "[w]ell, a lot of my rights have," and the trial court interjected, stating, "Mr. West, whoa, I'm talking now."

The trial court asked the defendant whether he would like to speak before the court sentenced him. The defendant stated that he did not want to address the court. The trial court indicated that it had reviewed the presentence investigation report and a medical evaluation of the defendant. Then, the trial court addressed the defendant as follows:

"The Court: And I just want to say, you know, Mr. West, I think your attitude here today frankly says most of what this case is about. You know, you're disrespectful to your attorney, you're upset with your—

"The Defendant: No I wasn't.

"The Court: Mr. West, see, again, my turn now. . . . I just gave you an opportunity to speak, you said no. . . that's the second time you've interrupted me. . . .

"[T]he way [the presentence investigation report] comes across . . . I'm thinking, the young man's got it, hit a home run, understands it, he just made a boneheaded move. And then I turn over to page two where, again, what the substance and sum of what happened here tonight is all about. You proceed to blame everything else in the world for what happened. I quote, 'I was accused of things and charged with things that are not true. Connecticut law officers took an oath and lied under oath. Now is that fair? I do not believe I had a fair case because of the color of my skin.' . . .

"You admitted to cursing them out. You . . . admitted to going out the door and attempting to interfere with them while they were trying to arrest your mother. Who somehow—again, you're gonna try to interrupt me—

"The Defendant: No. I wasn't.

"The Court: . . . And you admitted to spitting at Officer Knott. You didn't deny that it hit her, or you admitted you spit at her. . . . [A]t a minimum, you admit to the breach, you admit to the interfering, and you admit at a minimum to attempting to assault a police officer by doing something as vile as spitting on them. . . .

"The Defendant: Can I talk?

"The Court: No. You had your chance. It is my turn now. So you stand—and even now you stand here before me and I can see your attitude. . . . I believe, in this case, that a jail sentence is appropriate because standing before me right now, after you got on the stand and testified in front of me that you breached the peace, interfered with police, and spit at a police officer, that you still stand here and believe that you didn't do anything wrong and that this entire case and circumstances are other people's fault because of the color of your skin, and that the police got on the stand and lied.

"Those are your words, not mine. . . . If you had showed me that you accepted responsibility in full for what you did that day, you would walk out of here without a prison sentence, but because you can't do that, even now, with a good, qualified attorney who I know told you what you need to do to come in here and say, you're going to go to prison. And, hopefully, you'll learn the lesson that you can't poke the dog, right?" Thereafter, the trial court sentenced the defendant to three years incarceration, execution suspended after nine months, and two years of probation.

The defendant claims that the trial court erred by implying that it was penalizing the defendant for asserting his constitutional right to stand trial. The defendant argues that the "trial court's remarks . . . created the appearance of impropriety"; *State* v. *Elson*, 311 Conn. 726, 784, 91 A.3d 862 (2014); in that it "create[d] the perception . . . that the defendant's sentence was a penalty for his choice to stand trial and his continued assertion of his innocence." (Citation omitted; internal quotation marks omitted.) We see no such implication in the trial court's remarks, nor do we discern any appearance of impropriety.

We set forth the applicable standard of review and legal principles in this case. "[A] trial court possesses, within statutorily prescribed limits, broad discretion in sentencing matters. On appeal, we will disturb a trial court's sentencing decision only if that discretion clearly has been abused. . . .

"In spite of that discretion, however, the [a]ugmentation of [a] sentence based on a defendant's decision to stand on [his or her] right to put the Government to its proof rather than plead guilty is clearly improper." (Citation omitted; internal quotation marks omitted.) *State* v. *Kelly*, 256 Conn. 23, 80–81, 770 A.2d 908 (2001). A trial court "must [therefore] carefully avoid any suggestions in its comments at the sentencing stage that it was taking into account the fact [that the] defendant had not pleaded guilty but had put the prosecution on its proof." (Internal quotation marks omitted.) *State* v. *Elson*, supra, 311 Conn. 783. Accordingly, "a trial judge should not comment negatively on the defendant's deci-

sion to elect a trial during sentencing, given the appearance of impropriety of that consideration." Id., 777.

However, "[a] defendant's demeanor, criminal history, presentence investigation report, prospect for rehabilitation and general lack of remorse for the crimes of which he has been convicted remain legitimate sentencing considerations. . . . [A] sentencing court is not preclude[d] . . . from finding a lack of remorse based on facts other than the defendant's failure to plead guilty . . . ." (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 782–83. "Such information may come to the judge's attention from evidence adduced at the . . . trial itself, from a . . . presentence investigation . . . or possibly from other sources. . . . Thus, evidence adduced at trial detailing the nature and extent of the offenses charged, as well as the defendant's conduct during the trial . . . are among the considerations that the sentencing court may take into account . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Coleman*, 242 Conn. 523, 544, 700 A.2d 14 (1997).

The facts in *Elson* are clearly distinguishable from those in the present case. Unlike the trial court in *Elson*, which stated that the defendant "wouldn't have put the victim through the trial" if he were truly apologetic for his actions; (emphasis omitted; internal quotation marks omitted) *State* v. *Elson*, supra, 311 Conn. 733; the trial court in the present case did not make any statements concerning the defendant's *election* to stand trial. Rather, the trial court focused on the defendant's negative *attitude* and *conduct* during the presentation of evidence and at sentencing. The court also acknowledged the defendant's general lack of remorse for his conduct underlying the offenses, noting that the presentence investigation report indicated that the defendant "blame[d] everybody else in the world for what happened."

Because the Supreme Court in *Elson* "[did] not in any way intimate that trial courts are precluded from considering or discussing at sentencing the defendant's conduct [or general lack of remorse] during the trial and sentencing proceedings"; id., 781–82; the trial court here properly considered the defendant's behavior and lack of remorse when it addressed him at sentencing. Accordingly, we conclude that the trial court did not imply that it was penalizing the defendant for asserting his constitutional right to stand trial.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Knott testified that the defendant spat on her, while the defendant testified that he only spat toward Knott. For the purposes of the assault on a public safety officer charge, the discrepancy is a distinction without a difference because the crime can be accomplished when someone throws or hurls any bodily fluid, including saliva, "*at* such peace officer . . . ." (Emphasis added.) General Statutes § 53a-167c (a) (5).

[2] The defendant testified that Knott had a history of harassing him. He

also testified that during the incident, she was "picking on [him]" and that "she wanted [to get him]."

[3] The defendant requested the following charge: "It is a defense theory that the prosecution's investigation of this case was negligent, purposefully distorted and/or not done in good faith. For example, there has been testimony about _____. You are to assess the credibility of the evidence in light of this evidence together with all of the other evidence. Investigation which is thorough and conducted in good faith may be more credible while an investigation which is incomplete, negligent or in bad faith may be found to have lesser value or no value at all. In deciding the credibility of the witnesses and the weight, if any, to give the prosecution evidence, consider whether the investigation was negligent and/or conducted in bad faith."

[4] The trial court instructed the jury regarding the state's burden to prove the defendant's guilt beyond a reasonable doubt: "[A]s in all criminal cases, the defendant is presumed to be innocent unless and until proven guilty beyond a reasonable doubt. . . . The state has the burden of proving that the defendant is guilty of each crime charged. The defendant does not have to prove his innocence. This means that the state must prove beyond a reasonable doubt each and every element necessary to constitute each of the crimes charged. . . . The meaning of reasonable doubt can be arrived at by emphasizing the word reasonable. It is not a surmise, a guess or mere conjecture. . . . It is such a doubt as, in serious affairs that concern you, you would heed; that is, such a doubt as would cause reasonable men and women to hesitate to act upon it in matters of importance. . . . It is, in other words, a real doubt, an honest doubt, a doubt that has its foundation in the evidence or lack of evidence."

With regard to witness credibility in general, the court specifically instructed: "In deciding what the facts are, you must consider all the evidence. In doing this, you must decide which testimony to believe and which testimony not to believe. You may believe all, none or any part of any witness' testimony. In making that decision, you may take into account a number of factors including, was the witness able to see, or hear, or know the things about which that witness testified? How well was the witness able to recall and describe those things? What was the witness' manner while testifying? Did the witness have an interest in the outcome of this case or any bias or prejudice concerning any party or any matter involved in the case? How reasonable was the witness' testimony considered in light of all the evidence in the case and was the witness' testimony contradicted by what that witness has said or done at another time, or by the testimony of other witnesses, or by other evidence? If you think that a witness has deliberately testified falsely in some respect, you should carefully consider whether you should rely upon any of that witness' testimony. In deciding whether or not to believe a witness, keep in mind that people sometimes forget things. You need to consider, therefore, whether a contradiction is an innocent lapse of memory or an intentional falsehood, and that may depend on whether the contradiction has to do with an important factor or with only a small detail. . . . The weight of the evidence presented does not depend on the number of witnesses. It is the quality of the evidence, not the quantity of the evidence, that you must consider."

With regard to assessing police officer testimony, the court charged as follows: "Police officials have testified in this case. You must determine the credibility of police officials in the same way and by the same standards as you would evaluate the testimony of any other witness. The testimony of a police official is entitled to no special or exclusive weight merely because it comes from a police official. You should recall his demeanor on the stand and manner of testifying, and weigh and balance it just as carefully as you would the testimony of any other witness. You should neither believe nor disbelieve the testimony of a police official just because he is a police official."

[5] The defendant concedes that *State* v. *Wright*, supra, 149 Conn. App. 770, is controlling precedent, but he attempts to distinguish it from the present case by asserting that this case is different because it involves a police investigation in a case in which a police officer was a victim and the state's only witnesses were police officers. This claimed distinction does not alter our analysis or our conclusion. In making its decision, the court in *Wright* did not rely on the particular facts of the case, but on the general principle that "reasonable doubt is not a recognized defense to a crime . . . ." Id., 772.

In the alternative, the defendant asks this court en banc to overrule *State* v. *Wright*, supra, 149 Conn. App. 758. The defendant, however, failed to file the appropriate motion before this case was assigned for oral argument, and any other request in this regard is premature. See Practice Book §§ 70-7 and 71-5.

[6] The state contends that the claim is not reviewable because it was

not raised at trial. Nevertheless, because the defendant's brief minimally "identifies those portions of the record that form the factual basis for the unpreserved claim and a legal basis for the constitutional nature of that claim . . . the opposing party and [this] court are more than able to respond to or address that claim as a matter of reviewability." *State* v. *Elson*, 311 Conn. 726, 750, 91 A.3d 862 (2014).

---